223 P.2d 176

**PETERS et al. v. FRYE et al.**

**No. 5251.**

Supreme Court of Arizona.

Decided Oct. 23, 1950.

A. L. Maltby, of Phoenix, for appellants.

Warren L. McCarthy, County Attorney, Phoenix, and Anthony O. Jones, Deputy County Attorney, Phoenix, for appellees.

UDALL, Justice.

This appeal is from an order of the superior court dismissing application of plaintiffs-appellants for a writ of mandamus and quashing the alternative writ there-

tofore allowed, and from judgment rendered for defendant-appellee board of supervisors (hereinafter called the board). The matter is presented upon an agreed statement of facts made pursuant to section 21-905, A.C.A.1939.

As approved by the trial court, this statement in part reads:

"Plaintiffs with others petitioned the Board of Supervisors of Maricopa County, Arizona, to organize an irrigation water delivery district under the provisions of Article V, paragraph 75-500, et seq. ACA 1939. The petition was examined and found by the Board of Supervisors to conform to the provisions of the act, a bond was fixed, bond was provided by the plaintiff, and thereupon a hearing was set for the purpose of affording to the owners of land within the proposed district an opportunity to appear and object to the organization, or to the proposed boundaries thereof, or to the inclusion of his land therein. The Board then heard objections at hearings which were adjourned from time to time, finally resulting in the Board's refusal to organize such district, and making the following finding: (Statement by Supervisor Lecky)

" 'With reference to a water delivery ·district in Pomelo Park—it appears to me that there is only a small number of these lots developed at this time and that until a substantial portion of the area is developed there should be no need for a water delivery district being formed. I therefore move that the application be denied at this time. However, as soon as there is a substantial number of lots developed in this area a new petition should be submitted at which time I would feel inclined to vote in favor of the formation of such a district;' that said motion was adopted unanimously and became the official act of said Board.

"Thereafter, plaintiffs filed this action and secured issuance of an alternative writ of mandamus to compel the Board to proceed under the statute to organize the district. On the return filed by the Board, and at the hearing thereon, motions for judgment were made by both parties. The Board admitted in open Court that the petitioners had fully complied with all the requirements of 75-502 and 75-503, ACA 1939, and based its refusal on paragraph 75-504 thereof, which literally empowers the Board to refuse to organize the district. The trial court agreed with that view and denied plaintiffs' motion and quashed the alternative writ. * * *"

It is plaintiffs' contention that the Board based its refusal upon a condition, to wit, "need", not specifically enumerated in the statute; that its action therefore was arbitrary and capricious and that the Board in effect legislated a new and additional requirement into the statute by its decision.

The board on the other hand contends that the statute, hereinafter set forth, gives to it a broad discretionary power

to refuse to organize the requested district.

In answer to the board, plaintiffs maintain (1) that the authority of the board, by terms of the statute, is limited to finding whether or not plaintiffs have complied with the procedural requirements of the law—a purely ministerial duty—and (2) that the interpretation placed upon the statute by the board would make the statute unconstitutional in that the legislature may not delegate power legislative in character to another agency of government.

The first question presented for determination then concerns the function of the board under terms of the statute. Does it have the right to exercise its discretion or is the duty imposed a ministerial one only?

The statute in question, section 75-504, A.C.A.1939, reads in part as follows: "At the time fixed for the hearing, any owner of land within the proposed district may appear and object to the organization thereof, or to the proposed boundaries thereof, or to the inclusion of his land therein. The board of supervisors shall hear and consider all of said objections, and may continue the hearing from time to time, and at the conclusion of the hearing shall make its findings in writing. In said findings, it may refuse to organize said district, or may declare that it intends to organize the same with the boundaries proposed in the petition, or may declare that it intends to modify the proposed boundaries and proceed to organize said district with such modified boundaries. If it decides to proceed, it shall publish and post in the same manner as for the petition and notice of hearing, a notice stating that it has decided to proceed with the organization of the district * * *."

The stipulated facts show that plaintiffs have complied with the preliminary procedural requirements. Section 75-504, supra, is the statute which provides for the hearing and the proceedings pertaining to actual organization of the district.

We deem it unnecessary to analyze the various mandatory and permissive provisions of the statute. Even a cursory analysis shows that if this court were to accept the view advanced by plaintiffs it would render the act an absurdity. Under plaintiffs' view the hearing provided for by section 75-504 would be entirely unnecessary. For if the board's action is limited to approving the district's organization—a mere ministerial act as plaintiffs contend—upon a petitioner's compliance with the preliminary procedural steps, a rubber-stamping of such petition is the only action which the board could take regardless of what objections were made at the hearing.

The statute, supra, provides that "any owner of land within the proposed district may appear and *object to the organization thereof,* or *to the proposed boundaries thereof,* or *to the inclusion of his land therein.*" (Emphasis supplied.) It is ap-

parent that the *grounds* upon which an owner may make objection are not stated in the statute. That the proposed organization was being prematurely sought in that there was no present "need" for such a district would seem to be a valid objection which an owner may assert under the terms of the statute to the proposed organization.

It would be beyond the realm of common sense to expect the legislature to set forth in the statute the myriad grounds upon which such objections might be based. It is clearly apparent that conformance with the preliminary procedural requirements entitles the plaintiffs to nothing more than to have the petition set for hearing. What action is taken upon the petition as a result of the hearing is within the sound discretion of the board.

■ It is well settled that: "The board of supervisors possesses only such power as is expressly conferred by statute, or is necessarily implied therefrom." Board of Supervisors of Apache County v. Udall, 38 Ariz. 497, 1 P.2d 343; Maricopa County v. Southern Pac. Co., 63 Ariz. 342, 162 P. 2d 619, 622.

and in the instant case the legislature not by implication, but expressly, has given the board—its subordinate agency—the power, in its discretion, to refuse to organize the district even though all of the statutory procedural requirements for the formation thereof have been met.

■ We next consider plaintiffs' second point which is that to construe the enactment as giving the board this discretionary power would violate the Arizona Constitution in that it would be an unlawful delegation of legislative power to another agency of government. It appears to us that counsel for plaintiffs, in urging this contention, has failed to differentiate between the delegation of power to enact laws, which cannot be done, Tillotson v. Frohmiller, 34 Ariz. 394, 271 P. 867; Loftus v. Russell, 69 Ariz. 245, 212 P.2d 91, and the conferring of authority to administer a law in a manner that involves the exercise of administrative discretion. This distinction is made crystal clear in Livesay v. De Armond, 131 Or. 563, 284 P. 166, 170, 68 A.L.R. 422, wherein the same argument was made as to powers therein delegated to a Board of County Commissioners. The court stated: " * * * The mere fact that a subordinate body is granted discretion in the exercise of power conferred by a law does not necessarily demonstrate that the discretion amounts to the use of a legislative power. Any power other than a legislative one which the Legislature may exercise, it may delegate. Wayman v. Southard, 10 Wheat. 1, 6 L.Ed. 253. From this fact it necessarily follows that, before a statute can be condemned as conferring legislative power upon an administrative body, it must be evident that the power conferred is legislative. Hence at this point it is desirable to recognize the distinction between the delegation of pow-

er to make law or complete an incomplete act, and the conferring of authority upon a commission or official to administer a law in a manner that involves the exercise of administrative discretion. Since the power to make a law includes discretion as to what it shall be, this power can never be delegated, but the decisions display an increasing tendency, due to the complexity of our social and industrial activities, to hold as nonlegislative authority conferred upon commissions and boards, to determine the facts or state of things upon which the law intends to make its action depend. * * *"

To the same effect are these excerpts taken from People ex rel. Thomson v. Barnett, 344 Ill. 62, 176 N.E. 108, 113, 76 A.L.R. 1044, 1051:

"Delegation of power to make the law is forbidden as necessarily involving discretion as to what the law shall be, but there can be no valid objection to a law which confers an authority or discretion as to its execution, to be exercised under and in pursuance of the law itself. 'The true distinction * * * is this: The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.' Locke's Appeal, supra (72 Pa. 491, 508, 13 Am.Rep. 716).

\*    \*    \*    \*    \*    \*

"The principle has long been recognized, and is repeatedly announced in our decisions as well as in those of other courts, that, while the Legislature cannot delegate its general legislative authority, 'still it may authorize many things to be done by others which it might properly do itself. * * * Necessarily, regarding many things especially, affecting local or individual interests, the Legislature may act either mediately or immediately. We see, then, that while the Legislature may not divest itself of its proper functions, or delegate its general legislative authority, it may still authorize others to do those things which it might properly, yet cannot understandingly or advantageously do itself. Without this power legislation would become oppressive, and yet imbecile. Local laws almost universally call into action, to a greater or less extent, the agency and discretion, either of the people or individuals, to accomplish in detail what is authorized or required in general terms. The object to be accomplished, or the thing permitted may be specified, and the rest left to the agency of others, with better opportunities of accomplishing the object, or doing the thing understandingly.' People [ex rel. Caldwell] v. Reynolds, supra [5 Gilman, Ill., 1]. 'The true distinction is between a delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the

latter no objection can be made.' Sutherland on Stat.Const. § 68. * * *"

See also 11 Am.Jur., Constitutional Law, section 214.

Applying these principles to the legislation here involved we have no hesitancy in holding that the power granted the board is a discretion to be exercised in the administration of a law and not a delegation of power to make a law, hence the act in question when properly interpreted is not violative of the constitution.

Finally we consider the plaintiffs' right to a writ of mandate to control the action of the board. The mandamus statute, section 28-201, A.C.A. 1939, provides in effect that such mandate will issue only to compel the "performance of an act which the law specially imposes as a duty resulting from an office, trust or station". Ordinarily this coercive remedy is invoked to compel the doing of a purely ministerial act; e.g., see Martin v. Whiting, 65 Ariz. 391, 181 P.2d 819; State v. Board of Supervisors, 14 Ariz. 222, 127 P. 727; Earhart v. Frohmiller, 65 Ariz. 221, 178 P.2d 436, however within certain well-defined limitations the writ will also issue where there has been an abuse of discretion. We quote from Collins v. Krucker, 56 Ariz. 6, 104 P.2d 176, 179: "The general rule is that if the action of a public officer is discretionary that discretion may not be controlled by mandamus. This rule, however, is qualified by the provision that if it clearly appears that the officer has acted arbitrarily and unjustly and in the abuse of discretion, the action may still be brought." cf. Prescott Courier v. Board of Supervisors, 49 Ariz. 423, 67 P.2d 483.

Counsel for plaintiffs urges that the discretion allowed to the board in the instant case is an "unfettered" one. Such is not and cannot be true, for the courts are always alert to grant a review where it is sufficiently shown that a subordinate agency has abused its discretion by acting arbitrarily or capriciously. For an excellent analysis of this whole matter see Inglin v. Hoppin, 156 Cal. 483, 105 P. 582, 583, where in a reclamation district case it was stated: "* * * Where discretion other than legislative is vested in such a subordinate officer or tribunal, the exercise of that discretion will be subjected to correction if it be abused. Where the act is in its nature ministerial and depends upon the existence or nonexistence of facts, if the jurisdiction to determine that fact be vested, in the first instance, in such inferior tribunal, its determination made upon conflicting evidence will not be reviewed. Yet, if the case presented is one where the decision has been in such flat opposition to the plain and uncontradicted facts as to force the conclusion that the decision was in bad faith, a review by the courts will always be open to the aggrieved party * * *."

Cf. Board of Regents of University and State Colleges v. Frohmiller, 69 Ariz. 50, 208 P.2d 833.

As we have heretofore pointed out the board was expressly given the discretionary power to refuse to organize the district even though all of the statutory procedural requirements for the formation thereof had been met. We hold that on this record the board did not abuse its discretion as to the execution of the law under review as there is no showing that it acted arbitrarily or capriciously. The learned trial court properly quashed the alternative writ.

Judgment affirmed.

LA PRADE, C. J., and STANFORD, PHELPS and DE CONCINI, JJ., concur.