515 P.2d 590

W. P. SHOFSTALL, Superintendent, Arizona Department of Education and Member, State Board of Education; David Weisenborn, President, State Board of Education; Joseph P. Ralston, Maurice A. Marks, Paul P. Kennedy, Dwight Hudson, J. Lawrence Walkup, and O. B. Joy, Members, State Board of Education; Richard L. Harris, Member, State Board of Education and Maricopa County School Superintendent; Ernest Garfield, Treasurer of the State of Arizona; Gary Nelson, Attorney General of the State of Arizona; and John Does I through XIV, Appellants,

v.

Clarence HOLLINS, Individually, and Australia Hollins, his wife, Individually and as next friend of their minor children, Clarence Hollins, Jr., Gary Hollins, Janet Hollins and Paula Hollins; Carton Coleman, Individually, and Sarah Huckaby Coleman, his wife, Individually and as next friend of their minor child, Stevie Coleman; Hazel Huckaby, Individually, and. Faye Huckaby, his wife, Individually and as next friend of their minor children, Glenda Huckaby, Michael Huckaby, Jimmy Huckaby and James Huckaby; Wiley Noble, Individually, and Ida Noble, his wife, Individually and as next friend of their minor children, Doris Noble, Johnny Noble, Billy Noble, Craig Noble and Mary Louise Noble; and Arthur McCuin, Individually and Lorenza McCuin, his wife, Individually and as next friend of their minor children, Jerry McCuin, Charles McCuin and Victor McCuin, Appellees.

No. 11165.

Supreme Court of Arizona, En Banc.

Nov. 2, 1973.

Gary K. Nelson, Atty. Gen. by James G. Bond, Asst. Atty. Gen., Phoenix, for appellants.

Jerry Levine, Scottsdale, for appellees.

Brown Vlassis & Bain by Jack E. Brown, Phoenix, ˜for amici curiae David Kret, Jonathan Marshall and Arizonans for Children.

Dix W. Price, Phoenix, for amicus curiae Arizona Ed. Association.

HAYS, Chief Justice.

This case comes to us on appeal from the Superior Court. Pursuant to Rule 47(e), Rules of the Supreme Court, 17 A.R.S. we accepted jurisdiction of the appeal directly.

A civil action was filed by the Law Reform Unit of the Maricopa County Legal Aid Society, seeking injunctive and declaratory relief against alleged discrimination claimed to be in violation of the Equal Protection Clause of the Arizona and United States Constitutions. Plaintiffs consist of two groups: students attending school in Roosevelt School District and taxpayers in that district. Plaintiffs claimed that the system of financing public schools in Arizona is discriminatory because of the disparity of wealth in school districts; that this disparity results in inequality in education for the students, and an unequal burden on taxpayers in the poorer districts.

Motions for summary judgment were filed. The trial court granted a summary judgment for the plaintiff-taxpayers on the grounds that the system of school financing discriminated against them. The trial court further found that the plaintiff-students had not suffered injury or inequality in their right to an education and denied their motion for summary judgment.

There have been developments since this appeal was filed which tend to narrow the purview of this litigation. In the first place, the United States Supreme Court, in a decision rendered March 21, 1973, settled the question of the alleged violation of the United States Constitution. San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

The Arizona Legislature, in Laws 1973, ch. 182, sec. 13, effective July 1, 1974, repealed the financing provisions for common and high schools. The effect of this legislative action is to reduce the need for us to meet specific and detailed contentions of defects in the current school financing system, as any court plan could not be effectuated prior to the fiscal year beginning July 1, 1974. The judgment of the trial court indicates that it was not to take effect until the close of the second session of the 31st Legislature in 1974.

We do see merit, however, in discussing the two basic contentions of the plaintiffs. The first contention regarding the plaintiff-students has in part been determined by the trial court in its finding that they had not suffered injury nor inequality in their right to an education.

Ariz.Const. art. XI, § 1, reads:

"The Legislature shall enact such laws as shall provide for the establishment and maintenance of a general and uniform public school system, which system shall include kindergarten schools, common schools, high schools, normal schools, industrial schools, and a university (which shall include an agricultural college, a school of mines, and such other technical schools as may be essential, until such time as it may be deemed advisable to establish separate State institutions of such character.) The Legislature shall also enact such laws as shall provide for the education and care of the deaf, dumb, and blind."

Ariz.Const. art. XI, § 6, reads in part:

"The Legislature shall provide for a system of common schools by which a free school shall be established and maintained in every school district for at least six months in each year, which school shall be open to all pupils between the ages of six and twenty-one years."

Language in some respects similar to the Arizona Constitutional provisions is to be found in other state constitutions. *See*

art. VIII, § 1 of the Illinois Constitution, art. VII, § 1 of the Texas Constitution, Vernon's Ann.St., and art. VIII, § 4 of the New Jersey Constitution.

As we see it, the Arizona Constitution mandates "a general and uniform public school system . . ." (art. XI, § 1) and "a system of common schools by which a free school shall be established . . ." (art. XI, § 6). The present school laws do provide for a system which is statewide and uniform. The minimum length of the school year is provided in the constitution, and the legislature has provided for a means of establishing required courses, qualifications of teachers, textbooks to be used in common schools, and qualifications of professional nonteaching personnel. A. R.S. § 15–102. The legislature has also provided statewide a general and uniform method for establishing schools in every county. A.R.S. § 15–401 et seq.

■ We hold that the constitution does establish education as a fundamental right of pupils between the ages of six and twenty-one years. The constitution, by its provisions, assures to every child a basic education. The United States Supreme Court, in discussing the Texas school system, said:

"Even if it were conceded that some identifiable quantum of education is a constitutionally protected prerequisite to the meaningful exercise of either right, we have no indication that the present levels of educational expenditure in Texas provide an education that falls short. Whatever merit appellees' argument might have if a State's financing system occasioned an absolute denial of educational opportunities to any of its children, that argument provides no basis for finding an interference with fundamental rights where only relative differences in spending levels are involved and where—as is true in the present case—no charge fairly could be made that the system fails to provide each child with an opportunity to acquire the basic minimal

skills necessary for the enjoyment of the rights of speech and of full participation in the political process." San Antonio Independent School Dist. v. Rodriguez, 93 S.Ct. at 1298–1299.

■ The high courts of some of our sister states have also held education to be a fundamental right under their constitutions. See Serrano v. Priest, 5 Cal.3d 584, 96 Cal.Rptr. 601, 487 P.2d 1241 (1971), and Milliken v. Green, 389 Mich. 1, 203 N.W.2d 457 (1972). These courts, however, went on to hold the school financing laws of their states unconstitutional under the "equal protection" clauses of the United States and their respective constitutions. With these decisions we do not agree—at least in the sense that we do not find that our constitution requires such a holding.

Arizona Constitution, art. II, § 13, reads as follows:

"No law shall be enacted granting to any citizen, class of citizens, or corporations other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

In Robinson v. Cahill, 62 N.J. 473, 303 A.2d 273 (1973), the New Jersey Supreme Court, although holding their state financing system to be unconstitutional, rejected the concept of "fundamental right" and the application of equal protection clause. (See 303 A.2d at 283–287). They found that New Jersey's constitutional provisions, along with historical antecedents and statutory law, required the invalidation of the school financing system. We do not find ourselves similarly compelled by the Arizona Constitution.

■ A school financing system which meets the educational mandates of our constitution, i. e., uniform, free, available to all persons aged six to twenty-one, and open a minimum of six months per year, need otherwise be only rational, reasonable and neither discriminatory nor capricious.

A school financing system which has a rational and reasonable basis and which

meets the educational mandate of our constitution should, unless otherwise discriminatory or capricious, be upheld.

With regard to the second contention—that of taxpayer-plaintiffs—we find it rather succinctly met by the following quotation from San Antonio Independent School Dist. v. Rodriguez, *supra.*

"Moreover, if local taxation for local expenditure is an unconstitutional method of providing for education then it may be an equally impermissible means of providing other necessary services customarily financed largely from local property taxes, including local police and fire protection, public health and hospitals, and public utility facilities of various kinds. We perceive no justification for such a severe denegration [sic] of local property taxation and control as would follow from appellees' contentions. It has simply never been within the constitutional prerogative of this Court to nullify statewide measures of financing public services merely because the burdens or benefits thereof fall unevenly depending upon the relative wealth of the political subdivisions in which citizens live." 93 S.Ct. at 1307–1308.

In a sense, we believe that the taxpayers here are in no better posture than taxpayers of various governmental units sharing unequal tax impositions in providing other essential governmental functions. We are all aware that the citizens of one county shoulder a different tax burden than the citizens of another and also receive varying degrees of governmental service. The taxpayers of some municipalities have a greater tax burden than the taxpayers of others. We find no magic in the fact that the school district taxes herein complained of are greater in some districts than others. For the foregoing reasons, the trial court's summary judgment in favor of the taxpayer-plaintiffs is reversed.

We have some concern with the disposition of this case because of its peculiar posture previously adverted to. We shall leave to the trial court the determination of what portions of this litigation are moot.

Reversed and remanded for proceedings not inconsistent with this opinion.

CAMERON, V. C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.