DOUGLAS INDEPENDENT SCHOOL DISTRICT NO. 3 OF MEADE AND PENNINGTON COUNTIES, South Dakota, Plaintiff and Respondent,

v.

Elmer L. BELL, as County Superintendent of Schools of Meade County, South Dakota, Mrs. Dorothy Burnham, as County Auditor of Meade County, South Dakota, L. L. Kinney as Treasurer of Meade County, South Dakota, Defendants,

and

Meade Independent School District No. 101 of Meade and Lawrence Counties, South Dakota, Defendant and Appellant,

and

Rapid City Independent School District of Pennington County, South Dakota, and West River Independent School District of Meade, Ziebach and Perkins County, South Dakota, Defendants.

No. 12358.

Supreme Court of South Dakota.

Argued Oct. 12, 1978.

Decided Dec. 27, 1978.

Gregory A. Eiesland and Horace R. Jackson of Lynn, Jackson, Shultz, Ireland &

Lebrun, Rapid City, for plaintiff and respondent.

Bruce A. Hubbard of Morrill, Hansen & Hubbard, Sturgis, for defendant and appellant.

MORGAN, Justice.

This is an appeal from a decision of the circuit court for the Eighth Judicial Circuit apportioning approximately 40% of the unobligated balance in the Meade County High School Tuition Fund to the Douglas Independent School District (Douglas) pursuant to SDCL 13–28–33.1 and SDCL 13–28–33.2. Appellant, Meade Independent School District (Meade) contends that the statutory method of distribution utilized is unconstitutional and, alternatively, that if said method is constitutional, it was not properly interpreted. We affirm.

In 1947 the South Dakota Legislature authorized the establishment of a high school tuition fund in each county of the state.[1] This fund was used to provide tuition costs for high school students who lived in common school districts (school districts not providing high schools) to attend high school in other districts. Under this law each county superintendent of schools computed the amount of tuition payments necessary and certified this amount to the respective county auditors. That amount was then raised by special levy against the real and personal property of the common school districts and placed in the high school tuition fund.

School reorganization, which began in 1967, ultimately eliminated the need for such a fund by reorganizing all school districts into independent districts with full twelve-year programs.[2] In anticipation of the completion of reorganization, the legislature in 1968 made provisions for distribution of the balance of the funds after the claims for tuition would cease.[3]

The plan provided for three steps: (1) the surplus in the funds over and above the estimated expenditures for the 1968–1969 school year would be distributed on a proportionate basis essentially returning the surplus to those school districts that had absorbed common districts in amounts proportionate to what the common district or portion absorbed had paid into the fund; (2) each year thereafter, while there remained a need for the fund, the surplus over and above necessary estimated expenditures were distributed to school districts according to the number of students gained through enlargement of the boundaries; and finally, (3) when no common school district remained, the balance was to be distributed on the basis of the proportionate number of the county's school children being educated by each independent district.

Implementation of the reorganization plan was delayed by a referendum at which a majority of the voters approved the plan. As a result of the delay, the 1969 Legislature made certain amendments to the high school tuition fund distribution plan principally by denominating the first-step distribution as the "initial" distribution and the third-step distribution as the "final" distribution.[4]

The facts in this case are not disputed. Prior to June 1, 1968, there were several common school districts in Meade County. Those common school districts were appropriately taxed to provide the money for the Meade County High School Tuition Fund. In the process of reorganization, which occurred between 1968 and 1970, common school districts containing approximately 90% of the total assessed valuation of all land area of the common school districts in Meade County were consolidated with Sturgis Independent School District to form Meade. The remaining common school districts were consolidated with two other independent school districts. None of the

1. 1947 S.D.Sess.Laws, Chapter 73, later codified in SDC 1960 Supp. § 15.3306.

2. 1967 S.D.Sess.Laws, Chapter 39 (effective December 1968).

3. 1968 S.D.Sess.Laws, Chapter 52, codified at SDCL 13–28–33.1 (now repealed) and SDCL 13–28–33.2.

4. 1969 S.D.Sess.Laws, Chapter 59.

common school districts were merged into or consolidated with Douglas. Under the legislative formula for determining surplus funds for the first-step distribution, the Meade County High School Tuition Fund contained no surplus for distribution. However, the balance for distribution when no common school districts remained, amounted to approximately $140,000.00.[5]

Douglas initiated this action to force the distribution of the balance in the Meade County High School Tuition Fund in accordance with SDCL 13-28-33.2.[6] Douglas contended that under the statute, it was entitled to receive approximately 40% of the balance because approximately 40% of the school-age children in Meade County reside in the Douglas School District. The trial court agreed with Douglas's contention and awarded it approximately 40% of the balance in the Meade County High School Tuition Fund. Meade, which had intervened in the action, appeals.

█ Meade's first contention is that the method chosen by the legislature to distribute the balance in each county's high school tuition fund is unconstitutional in that it does not provide for distribution of that amount back to the district from which they were raised in amounts proportional to the amounts paid in by those districts. Meade argues that it is not constitutionally permissible to distribute 40% of the balance in the Meade County High School Tuition Fund to Douglas and only slightly over 50% to Meade since Meade contains common school districts that paid in over 90% of that amount. Meade contends that the only permissible method of distributing the balance is by apportioning it on a pro rata basis to the independent school districts which pres-

ently contain the common school districts that were taxed to contribute to the fund. Under this method, Meade would get approximately 90% of the balance and Douglas would get none.

It is not the judiciary's role in this case to determine what would be the most equitable and/or desirable method by which the balance in the Meade County High School Tuition Fund could be distributed. That is the legislature's role and they have acted by providing the method to be used in distributing the balance in each county's high school tuition fund. This is the method which the trial court followed in making its judgment and which Meade protests.

█ Whether the constitution requires that proceeds from the levy of taxes need to be uniformly and equally distributed was squarely before this court in *Dean v. Coddington*, 81 S.D. 140, 144, 131 N.W.2d 700, 702 (1964), wherein this court stated:

'It is generally held that the constitutional provisions requiring equality and uniformity relate to the levy of taxes, and not to the distribution or application of the revenue derived therefrom; and hence statutes relative to the distribution or application of such money cannot be held invalid on this ground.' . . . 'No requirements of uniformity or of equal protection of the law limit the power of a legislature in respect to allocation and distribution of public funds. . .'

We are in complete accord with the ruling in that case. See also *Kramar v. Bon Homme County*, 83 S.D. 112, 155 N.W.2d 777 (1968). The constitutional requirements of uniformity and equality apply only to the levy of taxes, not to their distribution.

5. Presently there is over $200,000 in this fund, including the amount Meade was allowed to withdraw, with no outstanding claims against it.

6. SDCL 13-28-33.2 as amended by Chapter 59 of the 1969 Session Laws provides:
   Whenever no common school districts exist in a county or whenever all remaining common school districts are within a superimposed high school district, the authorized county official shall determine when there will be no further claims against the county high school tuition fund and the balance thereof shall then be transferred to the county general fund and distributed to the public school corporations of the county in accordance with the provisions of § 13-13-5. The distribution shall be accomplished within one year after there are no common school districts existing in a county or all common school districts are within a superimposed high school district.

■ Meade further argues that the method of distribution used violates Article XI, Section 8 of the South Dakota Constitution, which provides that taxes may be applied only to the object for which they were levied. This court, however, in *State v. Esmay*, 72 S.D. 270, 33 N.W.2d 280 (1948) held that when the object of a levy is completed and the remaining funds are no longer needed or can no longer be used, they may be diverted to any public purpose. The legislature, in enacting the method of distribution, determined that the object for which those taxes were levied had been fulfilled. The legislature had established the high school tuition funds for a specific purpose and, in providing for the elimination of those tuition funds and distribution of amounts remaining in them, viewed that purpose as having been completed. There were no claims outstanding against the various high school tuition funds and the legislature's decision to use those amounts remaining for the education of school children generally, a public purpose indeed, was not improper.

■ Meade's second contention is that the method of distribution which should have been used by the court is the method which the legislature mandated for the initial or step one distribution. Under this method, Meade would receive nearly 88% and Douglas would receive less than 3% of the funds. Meade argues that the 1969 amendment made it clear that it was the legislature's intent that the initial distribution, regardless of when it was made, be made in accordance with the proportionate method it set out for the 1968 distribution. It follows, Meade argues, that since no distribution was made in 1968 due to a lack of a surplus to distribute, the distribution to be made now is the initial distribution and it should be made as the 1968 distribution was to be made. We cannot agree with Meade's interpretation of the statute. While the 1969 amendment did insert the word "initial" and did eliminate the October 1, 1968, deadline, we must look to the entire statutory scheme. The legislature actually provided for three steps, an initial, an interim, and a final distribution, each upon a different formula. What the legislative reasoning and intent were we need not inquire because the intent is clear that the initial step and formula would be applicable only where there was necessity for keeping a balance to cover foreseeable claims, whereas the final step and formula would be applicable to distribute the unexpended balance when the possibility of claims had ceased. The fact that the application of the first-step formula in this case yielded nothing for actual distribution does not alter that procedure. The initial distribution took place, even though, in reality, there was no monetary distribution. It is likely that some counties made monetary initial distributions under the formula because of a surplus in their fund. Meade County did not have such a surplus and therefore waived, in a sense, the initial distribution.

The trial court's utilization of SDCL 13–28–33.2 in distributing the balance in the Meade County High School Tuition Fund was proper. The judgment is affirmed.

All the Justices concur.