675 P.2d 1371

LAKE HAVASU CITY, a municipal corporation, by and for the inhabitants thereof, real parties in interest, Plaintiff-Appellant,

.v.

MOHAVE COUNTY, a political subdivision of the State of Arizona, the Mohave County Board of Supervisors; William J. Roper; Jerry Holt; James L. Schultz; the Mohave County Board of Health; the Mohave County Health Department and its director, John G. Lingenfelter, M.D., Defendants-Appellees.

No. 1 CA–CIV 6497.

Court of Appeals of Arizona, Division 7, Department B.

Oct. 20, 1983.

Review Denied Jan. 17, 1984.

Wachtel, Biehn & Malm by James B. Wyss, Lake Havasu City, for plaintiff-appellant.

William J. Ekstrom, Jr., Mohave County Atty. by Richard F. Albrecht, Deputy County Atty., Kingman, for defendants-appellees.

## OPINION

GREER, Judge.

In this appeal from a summary judgment in favor of Mohave County (the County), we are asked to determine whether the trial court erred by holding that the County is not obligated to provide certain health services [1] to residents of Lake Havasu City, Arizona (the City). The determinative issues are:

1) Whether A.R.S. § 36–190 obligates the County to provide health services to residents of the City at no charge; and,

2) Whether it is a violation of the equal protection laws to allow the County to require a cost contribution from the City where identical services are provided to residents of the County living outside the corporate limits of the City without any additional charge?

The basic facts necessary to a resolution of this matter are not in dispute. In 1966, the County abolished its then existing city-county health department and established a county only health department. That new department, the Mohave County Health Department, provided various health services to all residents of Mohave County, including residents living within the boundaries of Kingman, Arizona, then the only incorporated city in Mohave County. Services were provided to Kingman in return for a per capita cost contribution to the health department.

In 1978, Lake Havasu City was established as a municipal corporation within the boundaries of Mohave County. The Mohave County Health Department subsequently requested a cost contribution from the City, similar to the one received from the city of Kingman, in return for continuation of services to residents of the new City. The City questioned the County's authorization to charge for provision of the health services. Eventually, in July, 1981, the County advised the City that it would institute the necessary steps to phase out health services to the City unless the requested cost contribution was received. The City refused and filed a complaint for special action in superior court, seeking an order requiring the County to continue supplying health services to residents of the City. The County answered and filed a motion for summary judgment, which was subsequently granted in its favor by the superior court.

For the following reasons, we conclude that the County is not required to provide the contested health services to the City

---

1. The contested services are listed by the parties as follows: communicable disease control; family planning; immunization; maternal and child health counseling; nutrition services; Tuberculosis control; women's, infant's and children's supplemental food program (WIC); air pollution; food and beverage inspection and control; sewage disposal; swimming pool inspection; vector control; mosquito control; and, animal control. Mohave County has recog-

nized a statutory obligation to provide Tuberculosis control and immunization services to school age children who are residents of Lake Havasu City. They have also recognized a contractual agreement to provide septic tank and swimming pool inspection services to the City. We also note that, although not an issue herein, A.R.S. § 36–183.01 obligates Arizona counties to provide indigent health services to all residents of the County.

and, if it does, it may lawfully charge the City for those services.

## I.

### INTERPRETATION OF THE STATUTE

A.R.S. § 36–190 provides:

The legally appointed director of any county health department *may* provide equal health services and in cooperation with local authorities *may* have jurisdiction over the health services of all incorporated cities and towns within the county when the governing body of a city or town specifically requests such service. [emphasis added].

The City contends that the words "may" are mandatory and therefore impose a duty upon the County to provide equal health services to all residents of the County at no charge. The County, on the other hand, maintains that the words "may" are permissive and therefore establish no duty to provide health services.

### A. Legislative intent.

In interpreting the statute, we are guided by the fundamental rule of statutory construction that we must ascertain and give effect to the intent of the legislature. *Mardian Construction Co. v. Superior Court*, 113 Ariz. 489, 557 P.2d 526 (1976). The intent of the legislature seems clear at first glance; there appears nothing confusing about the word "may." Where a statute contains clear and unambiguous language, it is to be given that meaning unless impossible or absurd consequences will result. *Balestrieri v. Hartford Accident & Indemnity Insurance Co.*, 112 Ariz. 160, 540 P.2d 126 (1975); *Marquez v. Rapid Harvest Co.*, 89 Ariz. 62, 358 P.2d 168 (1960). The problem here, as the City points out, is that the word "may" has not been consistently interpreted to be permissive. Our supreme court pointed this fact out in *Frye v. South Phoenix Volunteer Fire Co.*, 71 Ariz. 163, 224 P.2d 651 (1950):

The meaning of the word "may" has been interpreted by this court in a number of cases, in some of which was held to mean "must" while in others it was

considered to be permissive only depending upon the legislative intent as ascertained by the court in applying the ordinary rules of statutory construction. It follows, therefore, that its meaning must always depend on the legislative intent as determined by rules of statutory construction.

*Id.* at 167, 224 P.2d at 654.

■ When the legislative intent cannot be determined from the exact language of a particular statute, we are required to look at the subject matter of the statute within the context of the entire act, the statutes' effects and consequences and the spirit and purpose of the law. *Id.; Castregon v. Huerta*, 119 Ariz. 343, 580 P.2d 1197 (1978). With this in mind, we turn to an examination of the Arizona Public Health and Safety Act. A.R.S. § 36–101 *et seq.*

■ The Act contemplates a comprehensive state health planning system in which state, county and city governments participate. At the top of the system is the Arizona Department of Health Services, which has general powers over the health of all residents of the State of Arizona. A.R.S. §§ 36–102, 36–104. Articles one and two of the Act pertain to the health services provided by the Department of Health and the overall state health planning scheme. Article three of the Act (A.R.S. §§ 36–161 through 36–168) sets forth a mandatory scheme for the establishment of county and city boards of health. A.R.S. § 36–161 provides for the mandatory creation of a county board of health:

A. The chairman of the board of supervisors, the county attorney and the county superintendant of public health of each county shall constitute the county boards of health. The chairman of the board of supervisors shall be president, the county attorney shall be vice president, and the superintendant of public health shall be secretary of the board.

A.R.S. § 36–162 grants each county board the same powers as the state department of health services, but limits its jurisdiction

to those areas within the respective county limits but *outside the corporate limits of cities.*

A.R.S. § 36–165 provides for the mandatory establishment of city boards of health:

A. The mayor of each incorporated city shall, at the first meeting of the governing body in April each year, appoint two members of the governing body who, with the city engineer and the health officer shall constitute the city board of health.

■ Thus, under the above two statutes of article three, when an area of the county incorporates into a city, such as Lake Havasu did in 1978, that newly formed city is required to establish a city board of health. Upon establishment of such a local board of health, the county board of health loses any jurisdiction it previously had over that area of the county. A.R.S. § 36–162. Under the overall statutory scheme, the city and county boards of health cooperate with the state department of health to provide health services to residents within the jurisdiction of the respective boards of health.

Article four of the Act (A.R.S. §§ 36–181 through 36–191) offers cities and counties an alternative to maintaining separate boards of health under article three. A.R.S. § 36–182 allows, but does not require, the establishment of a county *department* of health (as opposed to a county *board* of health), a city-county department of health, or a district department of health:

A. For the purpose of providing local full time public health service, the board of supervisors of a county may:

1. Establish a county department of health.

2. Enter into a *cooperative* agreement with a city or cities for establishment of a city-county department of health. The establishment of any such department, and any agreement for the establishment of a city-county department of health, is subject to approval by the department of health

services and to the provisions of this article.

3. Enter into a cooperative agreement with one or more counties for establishment of a district department of health.

(emphasis added). When a city-county department of health is established, the county board of supervisors and city council are required to act jointly and appoint a board of health consisting of members of various city and county agencies under the provisions of A.R.S. § 36–183(C).[2] And, under A.R.S. § 36–188, all article three boards of health are abolished upon the establishment of a city-county health department.

Finally, a most significant provision of article four is the *method by which the* costs of the department of health are met. A.R.S. § 36–185 provides that the operating costs of the department *shall* be shared on an equal per capita basis, based upon the official census of the population of the county and participating cities.

■ In the instant case, Mohave County has chosen to operate under an article four county department of health. A.R.S. § 36–182(A)(1). Because the County has not entered into a cooperative agreement with the City to establish a city-county health department, only the county article three board of health is abolished. The City is still required to maintain its own board of health under article three.

■ In determining the jurisdiction of the county department of health, it is important to note that the previously mentioned jurisdictional clause of article three, A.R.S. § 36–162(B), is not applicable. Thus, we must look to article four to determine the jurisdiction of the county department of health. It is at this point that A.R.S. § 36–190 comes into play. That statute provides that the county *may* have jurisdiction over the health services of all incorporated cities within the county when specifically requested by a city. Without

---

**2.** It should be kept in mind that this article four board of health is separate and distinct from the board of health envisioned under article three of the Act.

that statute the county would not be authorized to exercise jurisdiction within the limits of an incorporated city. In our opinion the statute provides a third alternative to a city for providing health services to its residents. In addition to providing health services through its own board of health under article three, or through a city-county department of health under article four, we believe the legislature intended to allow the city to enter into a cooperative agreement with a county department of health to provide services to cities or towns. However, we do not believe the County is prohibited from requesting a cost contribution under such agreements.

▆▆▆ Our conclusion is soundly supported by our examination of the overall statutory scheme. Statutes must be given a sensible construction which will avoid absurd results. *School District No. 3 of Maricopa County v. Dailey*, 106 Ariz. 124, 471 P.2d 736 (1970); *St. Joseph's Hospital and Medical Center v. Maricopa County*, 130 Ariz. 239, 635 P.2d 527 (App.1981). If we were to accept the City's interpretation, it would mean that a county could avoid its obligation to provide health services to a city simply by maintaining a county board of health under article three rather than a county department of health under article four. This is so because A.R.S. § 36–190 provides that a county health *department* may have jurisdiction over a city. On the other hand, the jurisdictional clause pertaining to article three county *boards of health* limits a board's jurisdiction to areas within the respective county but outside the corporate limits of cities.[3] Such an interpretation would clearly be nonsensical, especially in light of the legislature's clear intent to foster cooperation between cities and counties.

The City's interpretation would also discourage cities from entering into cooperative agreements for the creation of a city-county health department. As previously noted, if a city-county health department were formed, the city would be required to contribute to the cost of the department on a per capita basis. There would be no incentive for such an agreement if the city could simply sit back and force a county health department, such as the one in Mohave County, to provide health services at no charge.

**B. Legislative history.**

Our conclusion is also supported by a review of the legislative history of A.R.S. § 36–190. The current statute is derived from the 1947 amendments to the 1939 Arizona Code. Prior to 1947, the act limited a county's jurisdiction to the area outside the corporate limits of a city, as the current Act does, but was silent as to any authorization to extend that jurisdiction to an incorporated city.

In 1947, a section was added to the Act requiring county assistance to a city when requested, provided a financial contribution was made:

> Sec. 8. NON–PARTICIPATION OF INCORPORATED CITIES OR TOWNS AND JOINT HEALTH SERVICES.
> The legally appointed director of any county or district health department shall not provide health services or have jurisdiction over the health services of any incorporated city or town within the county or district unless the governing body of such incorporated city or town specifically requests such services and participates financially with the legally established county or district health department.

Laws 1947, ch. 55, § 8.

In 1949, an emergency measure was taken by the legislature, deleting the requirement for financial assistance and mandatorily vesting jurisdiction over incorporated cities or towns:

> A.R.S. § 68–218. PARTICIPATION OF INCORPORATED CITIES AND

---

3. The statute actually provides that counties have jurisdiction outside the corporate limits of cities having a city board of health. However, under our interpretation of the Act, a city will always be required to maintain a board of health unless and until it enters into a cooperative agreement with a county to establish a city-county department of health.

TOWNS IN JOINT HEALTH SERVICES.

The legally appointed director of any county or district health department *shall* provide equal health services and in cooperation with local authorities ˙*shall* have jurisdiction over the health services of all incorporated cities and towns within the county or district when the governing body of a city or town specifically request such service.

Laws 1949, ch. 40, § 1 (emphasis in original). In 1954, the legislature again amended the statute by substituting the words "may" for the word "shall":

A.R.S. § 68–218. PARTICIPATION OF INCORPORATED CITIES AND TOWNS IN ˙JOINT HEALTH SERVICES.

The legally appointed director of any county or district health department *may* provide equal health services and in cooperation with local authorities *may* have jurisdiction over the health services of all incorporated cities and towns within the county or district when the governing body of a city or town specifically requests such service. .

Laws 1954, ch. 156, § 6 (emphasis added).

■ The City contends that because there are not any committee notes to help explain the legislature's reasons for amending the statute in 1954, it would be mere conjecture to find that the legislature meant to change the law so that the counties were no longer required to provide health services. Under the City's position, the 1954 amendment had no actual effect on the status of the law. We do not agree. The City's position would render the 1954 amendment a futile act. However, when the legislature amends a statute we must presume they intended to change existing law rather than perform a futile act. *See, e.g., Trump v. Badet,* 84 Ariz. 319, 327 P.2d 1001 (1958); *Beach v. Superior Court,* 64 Ariz. 375, 173 P.2d 79 (1946); *McCloe v. Utah Home Fire Insurance Co.,* 121 Ariz. 402, 590 P.2d 941 (App.1978); *Needel v. Needel,* 15 Ariz. 471, 489 P.2d 729 (1971). In our opinion, the legislature de-

cided in 1954, after experimenting with various approaches, to permit but not require counties to exercise jurisdiction over and provide equal health services to incorporated cities when so requested.

Our interpretation also leads us to reject the City's argument that if the statute vests any discretion in the County, it is limited to a right to refuse health services only when the health needs of the city are already being met from another source. Initially, we note that this position is contrary to our above interpretation. Moreover, it necessarily fails because, as also mentioned above, the act requires a city to establish its own health board upon incorporation. Thus, the city is always required to meet the health needs of its residents upon incorporation. Therefore, a county would always be able to refuse service because a city is always required to meet its own health needs.

Finally, the City's reliance upon *Frye v. South Phoenix Volunteer Fire Co., supra,* is misplaced. Although that opinion interpreted the word "may" to be mandatory, it involved the interpretation of an entirely different statute, entirely irrelevant to our conclusion in this case.

## II.

### UNLAWFUL DELEGATION OF LEGISLATIVE AUTHORITY

■ We next consider the City's argument that the legislature must have intended the statute to be mandatory, because if it is interpreted to be permissive it amounts to an unlawful delegation of legislative authority. As the City points out, if the statute is susceptible to two interpretations, one of which renders it unconstitutional, we must adopt the interpretation favoring its validity. *See, e.g., Frye v. South Phoenix Volunteer Fire Co., supra; Welsh v. Arizona State Board of Accountancy,* 14 Ariz.App. 432, 484 P.2d 201 (1971). In the case at bar, we have no problem deciding that A.R.S. § 36–190 is not an unlawful delegation of legislative authority.

■ It is a well settled principle of law that the state legislature may not delegate its power to make laws. *Town of Chino Valley v. State Land Department,* 119 Ariz. 243, 580 P.2d 704 (1978); *Cochise County v. Dandoy,* 116 Ariz. 53, 567 P.2d 1182 (1977); *Southern Pacific Co. v. Cochise County,* 92 Ariz. 395, 377 P.2d 770 (1963). The non-delegation principle has been aptly described as follows:

> One of the settled maxims in constitutional law is that the power conferred upon the Legislature to make laws cannot be delegated by that department to any other body or authority. Where the sovereign power of the state has located the authority, there it must remain; and by the constitutional agency alone the laws must be made until the Constitution itself is changed. The power to whose judgment, wisdom, and patriotism this high prerogative has been entrusted cannot relieve itself of the responsibility by choosing other agencies upon which the power shall be devolved, nor can it substitute the judgment, wisdom, and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust.

*Tillotson v. Frohmiller,* 34 Ariz. 394, 407, 271 P. 867, 871 (1928); *accord State Compensation Fund v. De La Fuente,* 18 Ariz. App. 246, 501 P.2d 422 (1972). However, this does not mean that the legislature cannot confer authority upon an agency or department to exercise its discretion in administering the law. *See, e.g., Peters v. Frye,* 71 Ariz. 30, 223 P.2d 176 (1950); *Hernandez v. Frohmiller,* 68 Ariz. 242, 204 P.2d 854 (1949).

■ In *Peters v. Frye,* our supreme court made the following important distinction:

> It appears to us that counsel for plaintiffs, ... has failed to differentiate between the delegation of power to enact laws, which cannot be done, ... and the conferring of authority to administer a law in a manner that involves the exercise of administrative discretion.

71 Ariz. at 34, 223 P.2d at 179 (citations omitted). The *Peters* court went on to cite the following instructive langauge from *Thomson v. Barnett,* 344 Ill. 62, 176 N.E. 108 (1931):

> [W]hile the Legislature may not divest itself of its proper functions, or delegate its general legislative authority, it may still authorize others to do those things which it might properly, yet cannot understandingly or advantageously do itself. . Without this power legislation would become oppressive, and yet imbecile. Local laws almost universally call into action, to a greater or less extent, the agency and discretion, either of the people or individuals, to accomplish in detail what is authorized or required in general terms. The object to be accomplished, or the thing permitted may be specified, and the rest left to the agency of . others, with better opportunities of accomplishing the object or doing the thing understandingly.

*Id.* at 35, 223 P.2d at 179. All that is required for the proper delegation of such discretion is that it be defined with sufficient clarity to enable the agency or board to know their legal bounds. *Hernandez v. Frohmiller.* It is our opinion that the statute at issue is sufficiently clear to guide the county board in exercising its discretion.

■ The purpose of A.R.S. § 36–190 is to confer jurisdiction upon a county health department so that the department may provide health services to a city or town within the county when specifically requested by the city or town. Although the statute does not specify the type of health services to be provided, A.R.S. § 36–182 provides that a county health department may be established for the purpose of providing "local full time public health services." Moreover, A.R.S. § 36–190 provides that the county health department may supply *"equal* health services" to a requesting city or town. Thus, it is clear that a determination must be made as to whether equal services could feasibly be provided to a requesting city or town. Another guideline not listed in the statute, but

found elsewhere in the Act, is the amount of cost contribution. As previously noted, A.R.S. § 36–185(B) provides for a per capita contribution from a city participating in a city-county health department. Thus, that provision provides a guide to a county in determining the amount of the cost contribution.[4] Finally, A.R.S. § 11–952 lends further guidance to the parties. That statute, entitled "intergovernmental agreements in contract," sets forth certain terms which must be included within an agreement reached between a county and city.

The City contends, however, that there is nothing stopping the County from acting arbitrarily and capriciously in deciding not to provide health services to the City. We are not persuaded by this argument, however, because it can be made anytime an agency or board is vested with the least amount of discretion, no matter how specific the statutory guidelines are. A similar argument was made in *Peters v. Frye, supra.* The court responded as follows:

> Counsel for plaintiffs urges that the discretion allowed the board in the instant case is an 'unfettered' one. Such is not and cannot be true, for the courts are always alert to grant a review where it is sufficiently shown that a subordinate agency has abused its discretion by acting arbitrarily and capriciously.

*Id.* at 36, 223 P.2d at 180.

■ The county is, of course, required to act in good faith in determining whether it can properly provide health services to a city when requested. An act is done is good faith if it is reasonable under the circumstances. And, it has been held that " 'reasonableness' as 'a standard of an act, which can be determined objectively from the circumstances, is a common, widely-used and constitutionally valid standard in law.' " *Baseline Liquors v. Circle K Corp.,* 129 Ariz. 215, 220, 630 P.2d 38, 43 (1981), *cert. denied, Skaggs Drug Centers*

*Inc. v. Baseline Liquors,* 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 387 (1981).

This case is evidence that our current judicial system continues to provide a method to review alleged improper acts of agencies or boards.

### III.

### EQUAL PROTECTION

The City finally argues that if the statute is found to be permissive, it denies residents of the City equal protection of the laws. More specifically, it contends that a permissive reading of the statute requires members of one class, residents of the County who live within a city, to pay for services provided free of charge to members of another class, residents of the County who do not meet the County's cost contribution requirement. In the same vein, they contend that if they do not meet the County's cost contribution requirement, they would not receive services equal to other residents of the County, although they contribute equally to county, state and federal taxes from which the County Health Department is funded.

■ Initially, we note that the law recognizes a strong presumption supporting the constitutionality of a state statute, and that the party asserting its unconstitutionality bears the burden of overcoming that presumption. *Baseline Liquors v. Circle K Corp., supra; Eastin v. Broomfield,* 116 Ariz. 576, 570 P.2d 744 (1977). It is true that the county health department is in fact funded from the three sources the City points to. And, the County concedes that at least part of the matching state and federal funds are based upon the population of the entire county. However, it is apparent from the Act that state and federal matching funds are also available to the City. *See* A.R.S. § 36–189. Thus, there is nothing offensive about the fact that the County is using state and federal funds for

---

4. We are neither asked to nor do we on our own determine that this is the only method which may be used in determining an appropriate cost contribution. We merely cite it as one of several guidelines to county departments of health. Perhaps not coincidentally, we note that the cost contribution required by Mohave County in this case was based on a per capita basis.

services not provided to residents of the City.

It is unclear from the record to what extent county taxes are used to fund services which the County refuses to supply to residents of the City without a cost contribution. However, it does appear that County funds are being used, in part, to fund services which *are* provided to residents of the City. (i.e. tuberculosis control, immunization services, etc.). Thus, to the extent the City's equal protection claim remains viable, it rests upon the claim that residents of the City do not receive equal services for equal tax contributions.

Although this exact issue is one of first impression in Arizona, our supreme court implicitly approved such a scheme in *Shofstall v. Hollins*, 110 Ariz. 88, 515 P.2d 590 (1973). In *Shofstall*, the court held that the Arizona system of financing public education did not deny residents of some counties equal protection of the laws even though there was a seemingly unequal burden on taxpayers of poorer school districts. In discussing their holding the court stated:

> In a sense we believe that the taxpayers here are in no better posture than taxpayers of various governmental units sharing unequal tax impositions in providing other essential governmental functions. We are all well aware that the citizens of one county shoulder a different tax burden than the citizens of another and also receive varying degrees of governmental service. The taxpayers of some municipalities have a greater tax burden than the taxpayers of others. We find no magic in the fact that the school district taxes herein complained of are greater in some districts than others.

*Id.* at 91, 515 P.2d at 593.

And, in a similar case, the United States Supreme Court made the following comments:

> [Appellees] see no justification for a system that allows, ... the quality of education to fluctuate on the basis of the fortuitous positioning of the boundary lines of political subdivisions and location of valuable commercial and industrial prop-

erty. But any scheme of local taxation—indeed the very existence of identifiable local governmental units—requires the establishment of jurisdictional boundaries that are inevitably arbitrary ....

> ... [I]f local taxation for local expenditures were an unconstitutional method of providing for education then it might be an equally impermissible means of providing other necessary services customarily financed largely from local property taxes, including local police and fire protection, public health and hospitals, and public utility facilities of various kinds. We perceive no justification for such a severe denigration of local property taxation and control as would follow from appellee's contentions.

*San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 53–54, 93 S.Ct. 1278, 1307, 36 L.Ed.2d 16, 53–54 (1973).

Although not legally on point because they deal with the disparity of services between counties, these cases are nonetheless instructive because they point out the disparity that will inevitably result anytime a boundary line is drawn. There are many factors that must be considered in determining whether or where to draw the boundary lines of a county and when and where to incorporate county property into a city. The above two cases, together with the one at bar, raise two of the many factors. If we were to accept the City's position, all cities within the state would be required to provide equal services to city residents if the services were funded in part with city or state monies. Although not the reason for our decision on this issue, these policy considerations are important to keep in mind.

 It is the opinion of this court that a permissive interpretation of A.R.S. § 36–190 does not offend the equal protection clause of the Arizona or United States Constitutions. Our conclusion is mandated by the rule of law that "a taxpayer has no valid equal protection or due process claim merely because he does not receive benefits of tax monies to the same extent as other citizens similarly taxed." *Decatur*

Tax Payers League, Inc. v. Adams, 236 Ga. 871, 873, 226 S.E.2d 69, 71 (1976); *see also Hess v. Mullaney*, 213 F.2d 635 (9th Cir.1954) (no requirement of uniformity or equal protection of the law limits the power of a legislature in respect to the allocation and distribution of public funds); *accord Douglas Independent School District No. 3 v. Bell*, 272 N.W.2d 825 (S.D.1978). Although the federal and state constitutions require an equal assessment of taxes, there is no requirement that the persons paying the taxes receive equal benefits from the facilities. *Decatur Tax Payers League, Inc. v. Adams.*

 We also reject the City's contention that our interpretation of the statute will impose a double tax. Double taxation occurs "when the same property or person is taxed twice for the same purpose for the same taxing period by the same taxing authority ...." *Miami Copper Company Division, Tennessee Corp. v. State Tax Commission*, 121 Ariz. 150, 154, 589 P.2d 24, 28 (App.1978), quoting *Milwaukee Motor Transportation Co. v. Commissioner of Taxation*, 292 Minn. 66, 77, 193 N.W.2d 605, 612 (1971); *accord Associated Home Builders of Greater East Bay, Inc. v. City of Walnut Creek*, 4 Cal.3d 633, 94 Cal.Rptr. 630, 484 P.2d 606 (1971). The cost contribution required by the County obviously falls outside the above definition.

For the foregoing reasons, the judgment of the trial court is hereby affirmed.

FROEB, P.J., and GRANT, J., concur.