UNITED STATES of America

v.

William T. SMITH and Alan R. Stoneman.

Crim. Nos. 84–00156–04, 84–00156–05.

United States District Court, M.D. Pennsylvania.

Feb. 15, 1985.

James J. West, U.S. Atty., David C. Shipman, Asst. U.S. Atty., Harrisburg, Pa., for the U.S.

John Rogers Carroll, Thomas Colas Carroll, Carroll & Carroll, Philadelphia, Pa., for defendant Smith.

John C. Uhler, Uhler & DeLuca, York, Pa., for defendant Stoneman.

John C. Sullivan, Nauman, Smith, Shissler, & Hall, Harrisburg, Pa., for Patriot News Co.

Samuel E. Klein, Katherine Hatton, William B. Lytton, Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa., for Philadelphia Newspapers, Inc.

## AMENDED OPINION

MUIR, District Judge.

### I. Introduction.

Presently pending before the Court are motions filed by the Patriot News Company and Philadelphia Newspapers, Inc. seeking access to a document containing the names of unindicted co-conspirators in this case. The Government and Defendant Smith oppose release of the document to the newspapers and Defendant Stoneman does not. The major dispute between the newspapers on the one hand and the government and Defendant Smith on the other hand involves the question of what standard is applicable to the newspapers' motions.

### Background

On October 22, 1984, a Grand Jury returned a 16-count, 39-page indictment charging two corporations and five individuals with violations of federal law in connection with a scheme to obtain lucrative contracts from Pennsylvania state and local governments through bribery of public officials. The indictment charges that the defendants conspired to bribe, among others, R. Budd Dwyer, the Treasurer of the Commonwealth of Pennsylvania, and Leroy Zimmerman, the Attorney General of the Commonwealth of Pennsylvania.

Two of the five individual defendants have pled guilty to a single count of conspiracy to commit mail fraud, *see* 18 U.S.C. § 1341, and to violate the Interstate Transportation in Aid of Racketeering statute, 18 U.S.C. § 1952(a)(3), in violation of 18 U.S.C. § 371. Defendant David I. Herbert entered his guilty plea on November 9, 1984. Herbert was, at the time of the conspiracy, the state director of the Bureau of Social Security for Public Employees for the Commonwealth of Pennsylvania. Defendant John R. Torquato, Jr. entered his guilty plea on December 17, 1984. Defendant Judy Ellis pled guilty on December 21, 1984 to a single count of Interstate Transportation in Aid of Racketeering. 18 U.S.C. § 1952(a)(3). The remaining individual Defendants, Alan R. Stoneman, a California attorney, and William T. Smith, Jr., a Pennsylvania attorney, have pled not guilty to the charges against them. A jury has been selected for the trial of the case and trial probably will commence within the next month.

Count I of the indictment, the conspiracy charge, states in ¶ 2 that the two corporate and five individual Defendants "and others, known and unknown," conspired to commit the federal offenses noted above. On November 26, 1984, Defendant Stoneman filed a motion for a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure in which he requested that the government disclose to him the names of the persons referred to in ¶ 2, Count I of the indictment, *i.e.*, the unindicted co-conspirators. Defendant Smith filed a parallel request on December 20, 1984. On December 21, 1984, the Government filed a brief in opposition to Stoneman's motion for a bill of particulars in which the Government indicated that it would provide the Defendants with the names of the unindicted co-conspirators "upon direction of the court" but requested that the Court order that the names of the unindicted co-conspirators be kept confidential and, if filed with the Court, sealed by the Clerk of Court.

On January 8, 1985, the Court ordered the Government to provide the Defendants with the names of the unindicted co-conspirators. The January 8 order also ordered that the information be kept confidential as requested by the Government but contained a provision whereby the public might apply for modification of the confidentiality provisions of the order. The following is the full text of the dispositive portions of the January 8, 1985 order:

1. The Government shall provide to Defendants Stoneman and Smith the names of unindicted co-conspirators referred to in ¶ 2, Count 1 of the indictment in this case.

2. Information provided by the Government pursuant to ¶ 1 above shall not be disclosed by the Defendants or their counsel except upon leave of Court.

3. If information provided by the Government pursuant to ¶ 1 above is filed with the Clerk, the Clerk of Court shall seal the document(s) containing such information.

4. The provisions of this order relating to confidentiality of the names of unindicted co-conspirators may be modified by the Court on application of any interested person or body upon notice and for good cause shown.

On January 11, 1985, the Government filed the list containing the names of the unindicted co-conspirators with the Clerk of Court and the Clerk placed the document under seal. On January 15, 1985, the Patriot News Company filed an application for modification of the Court's January 8, 1985 order insofar as it provides for confidentiality of the names of the unindicted co-conspirators. On January 17, 1985, Philadelphia Newspapers, Inc. filed a motion requesting access to the document containing the names of the unindicted co-conspirators. In orders dated January 15 and January 21, 1985, the Court scheduled a hearing on the newspapers' motions and established a schedule for the submission of briefs regarding the newspapers' motions. On January 29, 1985, the Court granted the newspapers' motions for leave to intervene in this case for the limited purpose of moving for access to the list of unindicted co-conspirators.

The hearing on the newspapers' motions was held on Tuesday, January 29, 1985. The parties were allowed to present any evidence they deemed relevant to the newspapers' motions. The Government presented testimony by Special Agent Donald Jordan of the Federal Bureau of Investigation. The newspapers and Defendant Smith cross-examined Special Agent Jordan.

Following the presentation of evidence, the parties presented oral argument on the question of what standard the Court should apply in ruling on the newspapers' motions. At the conclusion of the hearing, the Court invited the parties to submit proposed findings of fact and conclusions of law. All interested parties submitted proposed findings and conclusions by February 6, 1985. The following are the Court's findings of fact, discussion, and conclusions of law. The nature of this matter is such that many of the Court's findings are not based directly on evidence presented at the hearing but are instead based on matters of public record and inferences drawn from those matters or evidence presented at the hearing or both.

## II. Findings of Fact.

1. On October 22, 1984, the indictment in this case was filed charging the named defendants in Count I with conspiring with each other "and others, known and unknown" to commit mail fraud and interstate transportation in aid of racketeering, in violation of 18 U.S.C. § 371.

2. The overt acts alleged in Count I of the indictment refer to several public and elected officials and other individuals who have not been indicted (James Scanlon, James Scanlon's family, Scott O'Donnell, Robert Rade Stone, Eugene Scanlon, Bob Scanlon, Barbara Scanlon, the wife of David I. Herbert, R. Budd Dwyer, Mark Phencie, Patrick T. Boyle, Michael Trant, Leroy Zimmerman, and unnamed state legislators) but none of them are referred to therein as co-conspirators nor are they alleged therein to have committed criminal conduct.

3. On November 26, 1984, Defendant Stoneman filed a motion for a bill of particulars under Rule 7(f), F.R.Crim.P. requesting the Government to furnish him with responses to 38 requests for particulars, including the names of all co-conspirators then known to the Government and unidentified in paragraph 2, Count I of the indictment.

4. On December 20, 1984, Defendant Smith filed a motion for a bill of particulars likewise requesting the Government to state the identity of all unindicted co-conspirators referred to in the conspiracy charged.

5. On December 21, 1984, the Government filed a brief in opposition to Stoneman's motion for a bill of particulars in which it stated, *inter alia,* that it would identify known unindicted co-conspirators for the defendant upon direction of the Court, but requested that the Court issue a protective order directing the information be kept confidential by defense counsel and be sealed with the Court.

6. The Government gave the following statement of reasons for its request for the protective order:

... so as to avoid the generation of prejudicial pretrial publicity or other abuse of this information. The Government makes this request because the names of some of the unindicted co-conspirators will obviously be elected public officials and public employees who are under active and continuing investigation. If the Defendant Stoneman were to make this information public, it could have an obvious detrimental effect on that continuing investigation.

7. On December 31, 1984, the Government filed a response to Defendant Smith's consolidated pretrial motions in which it reiterated its position regarding naming of unindicted co-conspirators.

8. On January 7, 1985, Defendant Smith filed a reply to the Government's response in which he stated that he did not oppose the Government's proposal concerning a protective order provided that he would be permitted to use the information in legitimate pretrial preparation.

9. On January 8, 1985, the Court granted the defendants' motions for a bill of particulars and the Government's request for a protective order regarding the names of the unindicted co-conspirators on the stated ground that the parties' requests appeared to be "reasonable" at that juncture.

10. The Court's January 8, 1985 order directed the Government to provide the defendants with the names of the unindicted co-conspirators referred to in paragraph 2, Count I of the indictment and further directed that information provided by the Government pursuant to the Court's order should not be disclosed by the defendants or their counsel except upon leave of Court; that if the information provided by the Government was filed with the Clerk, the Clerk of Court should seal the document(s) containing such information; and that the Court's order relating to the confidentiality of the information could be modified by the Court upon application of any interested person or body upon notice and for good cause shown.

11. On January 11, 1985, the Government filed a two-page document under seal with the Clerk of Court setting forth the required information in compliance with the Court's order.

12. The sealed document contains the names of persons who, in the opinion of the United States Attorney, are unindicted co-conspirators in this case or who could conceivably be considered as unindicted co-conspirators due to their alleged involvement in events included in the conspiracy.

13. The document containing the names of the unindicted co-conspirators is the only matter under seal in this case.

14. The persons named in the sealed document have not been found by a grand jury to be unindicted co-conspirators.

15. All of the individuals named in the sealed document are currently under active investigation by the Federal Bureau of Investigation in the Middle District and Western District of Pennsylvania and by the Federal Grand Jury in the Middle District of Pennsylvania.

16. The FBI's investigation will probably continue for six to nine months.

17. As of January 29, 1985, the Government had not made any final decision as to whether or not any of the individuals

named in the sealed document will be indicted.

18. The individuals identified in the sealed document may never be indicted.

19. Some of the individuals identified in the sealed document are elected officials and public employees of the Commonwealth of Pennsylvania.

20. The Government has notified three of the persons named in the sealed document by letter that they are targets or subjects of the Grand Jury's investigation, but has not informed the remainder of them that they are targets, subjects, co-conspirators or possible co-conspirators in connection with the continuing investigation or the indictment in this case.

21. The Government has not publicly identified any of the persons named in the sealed document as unindicted co-conspirators during any proceeding in this case or in any other document filed with the Court.

22. The Government's opinion concerning the names of persons who are or who could conceivably be considered as unindicted co-conspirators in this case is not currently in the public domain.

23. Permitting media access to the sealed document probably would generate extensive publicity regarding the persons named therein as unindicted co-conspirators, would undoubtedly cause these persons to learn of their status, and would probably cause them to receive inquiries from the media and others about their alleged involvement in the conspiracy.

24. Disclosure of the names of the unindicted co-conspirators could conceivably result in the destruction or suppression of valuable evidence in the investigation, and the manufacture or fabrication of false evidence.

25. The Government's evidence at the hearing concerning potential detriment to its investigation from release of the sealed information was presented in general terms of necessity because if the Government had elicited specific evidence concerning its investigation to show the degree and likelihood of detriment, it undoubtedly would have been required publicly to reveal the same investigative information it is attempting to protect from public disclosure.

26. No evidence was presented to contradict or impeach the Government's claim that the release of the names of the unindicted co-conspirators could seriously harm its ongoing investigation.

27. The disclosure of the names of the unindicted co-conspirators to the Patriot News Company and Philadelphia Newspapers, Inc. would subject the unindicted co-conspirators to publicity stigmatizing them as having been named by the United States Attorney as alleged participants in the conspiracy alleged in the indictment at a time when they have not been charged and would have no judicial forum in which to defend against the accusations.

28. The publicity generated from release of the names to the media would probably subject the persons named therein to embarrassment, annoyance, ridicule, scorn, traduction, and loss of reputation in the community.

29. It is just as likely at this juncture that the Government's continuing investigation will result in clearing the unindicted co-conspirators of any wrongdoing as it is that they will be indicted for criminal wrongdoing in connection with this conspiracy.

30. The continued ensealing of the information presently under seal will not deprive the press and public of the only source of information concerning the alleged involvement of third persons in the conspiracy charged in the indictment because the press and public will have full access to any testimony admitted at trial in this case concerning the involvement of such third persons in the conspiracy, just as the press and public have had full access to the detailed indictment filed in this case and every court proceeding and every other document filed in this action.

31. Any evidence admitted at trial concerning the involvement of third persons in the alleged conspiracy would undoubtedly consist of factual testimony or other evi-

dence specifically identifying what acts or omissions those persons allegedly committed and in what context.

32. Any argument by counsel or other reference publicly made at trial concerning the alleged involvement of third persons in the conspiracy would be based solely upon evidence identifying what acts or omissions were allegedly committed by those persons and in what context.

33. The document filed under seal by the United States Attorney is not evidence and it is not known at this point whether it will or will not be admitted as evidence at the trial.

34. It is uncertain at this juncture what volume or extent of evidence, argument, or other public reference to the alleged involvement of third persons as unindicted co-conspirators in the conspiracy will be permitted by the Court at trial.

35. Jurors selected for this case have been instructed by the Court to ignore any publicity or conversations regarding this case.

36. There is no evidence indicating that disclosure of the names of the unindicted co-conspirators will endanger the rights of Defendants Smith and Stoneman to a fair trial.

### III. Discussion

#### A. The Applicable Standard.

■ The parties differ as to the standard to be applied by this Court to the newspapers' request that the document containing the names of unindicted co-conspirators be unsealed. The newspapers contend that the document may be maintained under seal only if the government and Defendant Smith can show a compelling governmental interest in maintaining the ensealing and that no alternative less restrictive than maintaining the documents under seal is available to serve that governmental interest. The Government and Defendant Smith argue that the press has no right of access to the document or, alternatively, that the document may be maintained under seal on a showing of good cause and that the decision as to whether to maintain

the document under seal is a matter largely within the Court's discretion.

The parties agree that there is no authority which directly addresses the question of what standard should be applied in ruling on the newspapers' motions in this case. The newspapers rely on the line of cases both in the Supreme Court of the United States and in the Court of Appeals for the Third Circuit relating to the right of the press and the public to access to judicial proceedings. The Government and Defendant Smith rely primarily on the recent United States Supreme Court case of *Seattle Times Company v. Rhinehart*, — U.S. ——, 104 S.Ct. 2199, 78 L.Ed.2d 629 (1984), a case involving the right of the press to access to documents filed as part of the discovery process in a civil case and sealed at the plaintiffs' request by order of the trial court.

In *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564, 100 S.Ct. 2814, 2820, 65 L.Ed.2d 973 (1980) the United States Supreme Court held that absent an overriding interest articulated in findings, a criminal trial must be open to the public. The rule of *Richmond Newspapers* has been extended to the jury selection process in a criminal case, *Press-Enterprise Company v. Superior Court of California*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) and to a pre-trial suppression hearing in a case where the Defendant objected to closure of the hearing. *Waller v. Georgia*, — U.S. ——, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984).

The Court of Appeals for the Third Circuit relied on *Richmond Newspapers* in holding that the public has a right of access to pre-trial hearings in a criminal case that can be overcome only if (1) the trial court holds a hearing on the motion for closure of the pre-trial hearing, (2) the public has received adequate notice of the hearing and (3) the trial court makes and articulates findings that alternatives to closure would not adequately protect the Defendants' right to a fair trial. *United States v. Criden*, 675 F.2d 550 (3d Cir.1982). The Court of Appeals has also held that the press has the right to copy documents or

tapes admitted into evidence as well as transcripts of tapes admitted into evidence. *United States v. Criden,* 648 F.2d 814 (3d Cir.1982); *United States v. Martin,* 746 F.2d 964 (3d Cir.1984). In dictum in *Martin* the Court of Appeals stated that there is a strong presumption in favor of access to all judicial records and documents including "transcripts, evidence, pleadings, and other materials submitted by litigants." *Id.* at 968 (citations omitted).

The Government and Defendant Smith point to cases involving access to judicial documents as opposed to trial or trial-type courtroom proceedings. They maintain that there is a distinction between "judicial proceedings" and "judicial documents" and that the First Amendment or common law right of access to documents may be overcome more easily than the First Amendment right of access to judicial proceedings. The Government and Smith rely primarily on *Seattle Times Company v. Rhinehart,* —— U.S. ——, 104 S.Ct. 2199, 2207, 81 L.Ed.2d 17 (1984), in support of their argument regarding the distinction between "judicial proceedings" and "judicial documents." They also point to the statements in *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978) that "the right to inspect and copy judicial records is not absolute" and that "every court has supervisory power over its own records and files." *See also Seattle Times,* 104 S.Ct. at 2207–08, note 19 ("[A]ccess to [courthouse records] customarily is subject to the control of the trial court.")

*Seattle Times* held that a protective order prohibiting a newspaper from disseminating information gained by the newspaper through pre-trial discovery in a defamation action did not violate any First Amendment or common law right of the press to disseminate information. The protective order in that case prohibited dissemination of, among other things, names of individuals who had contributed to the Aquarian Foundation, one of the Plaintiffs in the case. Some of the contributors were not parties to the case. The trial court had found "good cause" for the entry of the protective order. The Supreme Court of the State of Washington found that entry of the order was not an abuse of discretion and that dissemination of the information which was the subject of the order would result in "annoyance, embarrassment and even oppression." *See id.* 104 S.Ct. at 2209.

The Supreme Court's holding that entry of the protective order did not violate the First Amendment rested on several factors. First, liberal discovery is available to litigants solely for the purpose of preparation for trial or settlement of a dispute and discovery material is not the sort of information traditionally available to the public. *Id.* at 2207–08. Second, privacy interests of litigants and third parties may be impinged upon by public release of discovery material. *Id.* at 2208–09. The Court also noted that the rule of civil procedure authorizing the protective order issued by the trial court, a rule identical to Fed.R.Civ.P. 26(c), furthers a substantial governmental interest unrelated to the suppression of expression and that the Rule therefore "implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context." 104 S.Ct. at 2208.

The question presently before the Court is which of the sources of authority discussed above is more applicable to the circumstances of this case. The newspapers argue that the strict standard favoring press access to judicial proceedings of *Richmond Newspapers, Inc. v. Virginia* and its progeny applies to the question of access to judicial documents just as much as it applies to access to trial and pre-trial proceedings. The Government and Defendant Smith contend that the less strict standard of *Seattle Times v. Rhinehart* applies.

In our view, this case resembles the situation presented in *Seattle Times* more than the situation in *Richmond Newspapers* and its progeny. Despite the extensions of *Richmond Newspapers,* the right of access

has not yet been extended to encompass materials not involved in a trial or pre-trial hearing. *United States v. Martin*, 746 F.2d 964 (3d Cir.1984), arguably represents the furthest extension of the *Richmond Newspapers* rule. Nevertheless, *Martin* involved press access to transcripts of tape recordings actually introduced into evidence at trial. The Court of Appeals noted in *Martin* that "the tapes have already been played in open court, and have been widely reported in the media". *Martin*, 746 F.2d at 970.

The document involved in this case, in contrast, has not been used in any pre-trial proceeding and it is not clear that it ever will be used in any proceeding. The material involved may prove irrelevant to the issues at trial or in any pre-trial proceedings. While the list was provided in response to the Defendants' request for a bill of particulars, it is similar or identical to the sort of information that might be obtained by the Defendants through pre-trial discovery under Fed.R.Crim.P. 16. Rule 16(d)(1) provides that a court may make protective orders as appropriate "upon a sufficient showing." In this respect, Rule 16(d)(1) is similar to Rule 26(c) of the Federal Rules of Civil Procedure, the rule analyzed by the Supreme Court in *Seattle Times*.

The analysis in *Seattle Times* is directly applicable to this case. The Court in *Seattle Times* emphasized that material made available through discovery in a civil trial is not the sort of information traditionally available to the public:

> Discovery rarely takes place in public ... Rules of civil procedure may require parties to file with the clerk of the court interrogatory answers, responses to requests for admissions, and deposition transcripts.... Jurisdictions that require filing of discovery materials customarily provide that trial courts may order that the materials not be filed or that they be filed under seal ... Federal district courts may adopt local rules providing that the fruits of discovery are not to be filed except on order of the

court.... Thus, to the extent that courthouse records could serve as a source of public information, access to that source customarily is subject to the control of the trial court.

104 S.Ct. at 2207–08, note 19. While *Seattle Times* discussed discovery in civil cases, the newspapers have not argued that material obtained through discovery in a criminal case has traditionally been available to the public and that the *Seattle Times* rationale is therefore inapplicable to a criminal case.

As in *Seattle Times*, a protective order regarding the information to which the newspapers now seek access is not a restriction on information that would otherwise have been available to the public. The list of unindicted co-conspirators was provided to the defense solely for the purpose of allowing the Defendants to prepare for trial. The Government was not required to file the list of unindicted co-conspirators with the Court and, had it not done so, the question of whether the press had a right of access to the list probably would not have arisen. (While the Government arguably made the list a judicial document by filing it despite the fact that the Government was not required to do so, it filed the document in partial reliance on the Court's January 8, 1985 order directing that the document be preliminarily maintained under seal subject to possible modification of the sealing order).

This case is similar to *Seattle Times* in two other respects. First, the protective order in this case does not prevent dissemination of the information contained in the sealed document if that information is obtained from a source unrelated to the pretrial discovery process in this case. Should the information be disclosed during trial, for example, the newspapers would be free to disseminate it. Second, the information that is the subject of the protective order seriously implicates privacy interests of third parties, *i.e.*, the unindicted co-conspirators.

Finally, we note that several cases decided prior to *Seattle Times* recognized, in the

context of a criminal case, the distinction between "public documents" and documents filed under seal and concluded that the latter were not subject to any presumptive right of public access. *See In Re Application of National Broadcasting Company, Inc.*, 635 F.2d 945, 952, note 4 (2d Cir.1980); *Applications of Kansas City Star*, 666 F.2d 1168, 1173, note 4 (8th Cir.1981).

In light of all of the foregoing, we conclude that the Government need not show a compelling interest that cannot be served by any alternative less restrictive than sealing of the list of co-conspirators. Rather, the decision as to whether to maintain the document under seal is committed to this Court's discretion and the document may be maintained under seal provided that the Government shows "good cause" or that the protective order will protect constitutional interests of the parties to this litigation or others.

### B. Application of the Standard.

■ The Government and Defendant Smith maintain that the list of unindicted co-conspirators should be maintained under seal for three reasons. First, disclosure of the list would infringe on the privacy rights of the persons named on the list. Second, disclosure of the names would hamper the Government's ongoing investigation of matters related to this case. Third, disclosure of the list might generate substantial publicity such that the defendants would be deprived of their right to a fair trial.

The parties presented no evidence regarding the potential for generation of publicity as a result of release of the list that would prejudice the Defendants' right to a fair trial. The evidence regarding the adverse impact of release of the list on the Government's continuing investigation into matters related to this case was unpersuasive. Nevertheless, we agree with the Government and Defendant Smith that the privacy rights of the indicted co-conspirators would be violated by disclosure of the list and that the right to privacy of those

individuals outweighs any common law or First Amendment right of access to the list.

Release of the list of names of unindicted co-conspirators clearly would invade the privacy rights of those individuals. The list constitutes an informal accusation of wrongdoing by the government to which the unindicted co-conspirators would have no meaningful opportunity to respond. Unlike the Defendants in this case who have been formally charged and have had or will have the opportunity formally to respond to the charges against them or to have their guilt or innocence with respect to the charges formally determined by a jury, the unindicted co-conspirators have no such opportunity.

In recognition of this problem, at least one court has held that individuals named as unindicted co-conspirators in an indictment are entitled to expungement of their names from the indictment in order to protect their right to privacy. *See United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975), *cert. denied, sub. nom Miami Herald Publishing Company v. Krentzman*, 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978). Similarly, many courts have sanctioned the sealing of documents on the ground that release of the documents to the public would violate third parties' privacy interests. *See, e.g., United States v. Hubbard*, 650 F.2d 293 (D.C.Cir.1980); *United States v. Nixon*, 418 U.S. 683, 687, note 4, 94 S.Ct. 3090, 3097, note 4, 41 L.Ed.2d 1039; *Krause v. Rhodes*, 671 F.2d 212 (6th Cir.1982); *See also U.S. v. Briggs*, 514 F.2d at 805 (5th Cir.1975) (Adverse impact of public disclosure of names of unindicted co-conspirators in a bill of particulars may "at least arguably" be tempered by protective orders). Thus, protection of the unindicted co-conspirators' right to privacy constitutes good cause for maintaining the list containing their names under seal.

### IV. Conclusions of Law.

■ 1. There is no First Amendment right of access to inspect and copy judicial records and documents that contain infor-

mation which was produced in pre-trial discovery proceedings.

■ 2. There is a common law right to inspect and copy judicial records and documents.

■ 3. This common law right of access generally creates a strong presumption in favor of access to judicial records and documents but does not apply to documents initially filed with the Court under seal upon a prima facie showing of good cause.

4. Even when documents have been initially filed under seal, a presumption of access generally applies in subsequent determinations of whether the ensealing should be continued when access to the sealed information is sought by third parties.

■ 5. The presumptive right to inspect and copy judicial records is qualified by the Court's inherent supervisory power to deny public access where dissemination of sealed information will unduly invade privacy interests of third persons or parties to the litigation or will reveal sensitive information detrimental to ongoing criminal investigations being conducted by the Government.

■ 6. The decision whether or not to grant access to judicial records and documents is left to the sound discretion of the trial court to be exercised in light of the relevant facts and circumstances of the particular case and upon a weighing of all pertinent interests involved.

■ 7. Persons who have not been charged as defendants in a criminal case have a recognized right of privacy in not being named as unindicted co-conspirators in an indictment or being identified and accused by the Government of criminal activity where such accusations are not directly relevant to the proceedings.

■ 8. Protective orders entered upon a showing of "good cause" in the context of civil and criminal pretrial discovery which do not restrict the dissemination of discovered information if gained from other

sources do not offend the First Amendment or the common law right of access to judicial records.

9. The Government has shown "good cause" in this case to seal the names of unindicted co-conspirators provided by the Government to the Defendants in response to the Defendants' motions for bills of particular, and to retain this information under seal at the present time, because the public release of this information would unnecessarily damage the reputation and privacy interests of the persons named in the sealed document.

■ 10. In the alternative, assuming that a higher standard must be met in order to justify continued ensealing of the information requested either under the First Amendment or the common law right of access, for example, "an overriding interest" based upon findings that ensealing is necessary to preserve higher values, that it is narrowly tailored to serve that interest and that no less restrictive alternative exists to continue ensealing of the information, the Government has also met that standard in this case.

11. The substantial privacy interests of the unindicted co-conspirators are "overriding interests" the protection of which serves a higher value than the public's right to access to the sealed information in this case.

12. The continued secrecy of the document sealed in this case is essential to protect the privacy interests of the persons named therein.

13. The Court's ensealing order is narrowly tailored to serve these interests because it only precludes access to one document, does not prevent the dissemination of the information contained therein if gathered from other sources and will only be maintained so long as necessary to protect the viability of these interests, that is, so long as the individuals named in the sealed document have not been indicted in connection with the conspiracy charged in this case.

An appropriate order will be entered.