680 P.2d 166

**PHOENIX NEWSPAPERS, INC., Petitioner,**

v.

**SUPERIOR COURT OF MARICOPA COUNTY and The Honorable Cheryl Hendrix, Judge thereof, Respondent Judge,**

**William Thomas ROGERS (Defendant); State of Arizona (Plaintiff), Respondents Real Parties in Interest.**

**No. 1 CA–CIV 7247–SA.**

Court of Appeals of Arizona, Division 1, Department A.

Nov. 8, 1983.

Reconsideration Denied Dec. 27, 1983.

Review Denied April 3, 1984.

Gust, Rosenfeld, Divelbess & Henderson by Richard A. Segal, Terrance C. Mead, Jeffrey A. Ekbom, Phoenix, for petitioner.

Thomas E. Collins, Maricopa County Atty. by James H. Keppel, Deputy County Atty., Phoenix, for respondent real party in interest State of Ariz.

Cunningham, Goodson & Tiffany, Ltd. by John F. Foreman, Barbara Jarvis, Phoenix, for respondent real party in interest Rogers.

## OPINION

JACOBSON, Chief Judge.

This special action proceeding presents the issue of whether petitioner, Phoenix Newspapers, Inc., (PNI) and one of its reporters, Albert J. Sitter, are entitled to a transcript of an *in camera* proceeding held by the trial court in connection with the application of William Thomas Rogers, Re-

spondent/Real Party in Interest, for a modification of his sentence.

The proceedings giving rise to the order of the trial court which is brought into question here are that Rogers was previously convicted of dealing in stolen jewelry. Rogers is the founder and operator of National Bullion and Coin, Inc. This conviction resulted in a sentence of one year in jail with work furlough privileges, which allowed Rogers out of jail during the day, but required him to spend evenings incarcerated. Following his conviction and based upon the work furlough privileges, Rogers continued to work as a consultant for National Bullion and Coin.

PNI is the publisher of two newspapers of general circulation in Arizona, the Arizona Republic and the Phoenix Gazette. One of its reporters, Sitter, had conducted a continuing investigation of the activities of National Bullion & Coin and had written a series of articles about Rogers, his company and alleged investigations by the Arizona Attorney General and the Maricopa County Attorney of the financial affairs of National Bullion & Coin. In short, Rogers and National Bullion & Coin are newsworthy subjects in Arizona.

On August 1, 1983, Rogers petitioned the trial court to modify his sentence and alleged in that petition that "New information has come to light which makes an immediate review of Will's terms and conditions of probation vital. The court is requested to set a closed hearing as soon as possible on this matter." When PNI and its reporter became aware that Rogers desired the hearing on his petition to modify be closed to the public, they moved to intervene in the proceedings for the purposes of objecting to the closure of that hearing. The petition to intervene for the limited purpose requested was granted and on August 10, 1983, the court convened for the

purpose of hearing arguments on whether the hearing on sentence modification should be closed.

During the course of these proceedings, Rogers' attorney alleged that if the information presented in support of his probation modification became public it would present a danger to Rogers and others. Defendant's counsel requested that he be allowed to make an offer of proof, *in camera*, for the purpose of allowing the trial court to consider the sensitiveness of this information. The trial court granted this request and an *in camera* presentation was held at which only the prosecutor, Rogers' attorney, the court reporter and the judge were present. At the start of the *in camera* proceedings and prior to making his offer of proof, defense counsel requested that the transcript of what was to be said be sealed. The state did not object and the court agreed. Based upon this ruling, counsel made his offer of proof.

Following the *in camera* presentation (which apparently took 20 to 30 minutes), the trial judge reconvened the proceedings in open court and announced her decision that the motion to close the sentence modification hearing was denied. Thereupon, Rogers moved to withdraw his petition to modify. This motion was granted. PNI then moved the court to release the transcript and tape of the *in camera* proceedings. This motion was denied. It is this denial of access to the *in camera* proceeding transcript that PNI seeks to review by this special action.

All parties agree that a special action is the appropriate remedy of PNI to seek review of the trial court's denial of PNI's access to the *in camera* transcript[1] since this is not an appealable order. However, both the state and Rogers urge this court not to grant the relief requested by PNI[2].

---

1. PNI initially complained of the trial court's alleged order that counsel for the state and the defendant not disclose to the press any information concerning the *in camera* proceedings. We find nothing in the record to support such an order ever being entered and PNI has conceded that such an order does not exist. We therefore

do not reach the question of whether such an order, if entered, is valid.

2. At time of oral argument because of the vacation schedule of Rogers' lead counsel, a request was made that all parties be allowed to file supplemental memoranda on or before September 12, 1983. This request was granted. Subse-

PNI's basic contention in this special action is that the trial judge was without legal authority to hold an *in camera* hearing and, if this premise is correct, that a transcript of this unauthorized proceeding must be made public. PNI relied primarily upon two sources for this contention. Rule 9.3(b), Arizona Rules of Criminal Procedure and Art. 2, § 11, Arizona Constitution.

Rule 9.3(b) provides:

All proceedings shall be open to the public, including representatives of the news media, unless the court finds, upon application of the defendant, that an open proceeding presents a clear and present danger to the defendant's right to *a fair trial by an impartial jury.* (Emphasis added.) A complete record of any closed proceeding shall be kept and made available to the public following completion of trial or disposition of the case without trial.

Art. 2, § 11 of the Arizona Constitution states:

Justice in all cases shall be administered openly, and without unnecessary delay.

PNI's argument is that given the constitutional mandate of "openness" and the limitations of Rule 9.3 allowing closure only where the defendant's right to a fair trial is involved, the trial court was without authority to allow closure in the *in camera* hearing which was admittedly held after trial.

While recognizing the constitutional rights involved here, including those of the news media, *see, Phoenix Newspapers, Inc. v. Jennings,* 107 Ariz. 557, 490 P.2d 563 (1971), we are of the opinion that PNI's argument is overly simplistic for it ignores the inherent power of the court to conduct *in camera* proceedings. This power was recognized in *Taglianetti v. United States,* 394 U.S. 316, 89 S.Ct. 1099, 2 L.Ed.2d 302 (1969) (approving *in camera* inspection of electronic surveillance tapes as not being violative of the defendant's 4th Amendment rights of confrontation) and *Dennis*

*v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) (recognizing that the court may use an *in camera* inspection to rule upon applications for "protective orders in unusual situations, such as those involving the Nation's security or clear cut dangers to individuals who are identified by the testimony produced").

Moreover, this inherent power is clearly recognized by Rule 15.5(c), Arizona Rules of Criminal Procedure, which provides in part that:

On motion of the party seeking a protective or excision order ... the court may permit him to present the material or information for the inspection of the judge alone.

The American Bar Association Standards for Criminal Justice, § 11–4.6, (2 ed. 1982) applicable to this rule provides:

Upon request of any person, the court may permit any showing of cause for denial or regulation of disclosures, or any portion of such showing, to be made in camera.

Also *see State v. McDaniel,* 136 Ariz. 188, 665 P.2d 70 (1983) and *State v. Cousin,* 136 Ariz. 83, 664 P.2d 233 (App.1983) which recognize the availability to the trial court of *in camera* proceedings.

We recognize that these authorities deal primarily with the court's power to regulate discovery and disclosure of information. However, they are indicative that the power of the court to regulate its proceedings is not so narrowly circumscribed as urged by PNI.

In our opinion, the power of the court to conduct *in camera* proceedings is derived from the inherent power of the court to judicially conduct its affairs. As was stated in *State ex rel. Mahoney v. Superior Court,* 78 Ariz. 74, 79, 275 P.2d 887, 889 (1954):

The 'inherent powers' of a court are an unexpressed quantity and undefinable term, and the courts have indulged in

quently, Rogers' lead counsel has moved to withdraw as counsel of record. Supplemental

memoranda have been filed by the state and PNI, but not by Rogers.

more or less loose explanations concerning it. Undoubtedly, courts of justice possess powers which were not given by legislation and which no legislation can take away. These are 'inherent powers' resident in all courts of superior jurisdiction. These powers spring not from legislation but from the nature and constitution of the tribunals themselves.

This power is not without limitation, and in this regard a distinction must be drawn between the adjudicatory function of the court and its ability to receive information necessary to intelligently rule on how the adjudicatory function will proceed. When the court is receiving information which deals directly with the substantive rights of the parties, that is, guilt or innocence, length of sentence, and type of sentence, the right to receive such information in private may be severely limited. Rule 9.3(b) speaks to this limitation. However, the right of the court to receive information in private so that it can intelligently assess its adjudicatory function may not be so limited. Rule 15.5 speaks to this power.

Moreover, even when the court is exercising its right to receive information so that it can intelligently rule on non-substantive issues, it should do so only in private for the most cogent reasons. This is not only because of constitutional requirements but also because confidence in the judicial process requires public scrutiny.

■ This brings us to a determination of whether the trial court had the raw power to conduct the *in camera* proceedings complained of here. To put matters in perspective it should be noted that the stated purpose of this *in camera* proceeding did not involve the question of whether the defendant's probation sentence should be modified. Rather, it dealt with the narrow issue of whether the defendant had valid reasons for closing that hearing, that is, the openness of the arena in which the evidence would be heard. The trial court was placed in the dilemma of either ruling on this question in the dark (the reasons for urging closure being the same reasons closure

was desired) or receiving that information *in camera* so that the ruling on closure could be made intelligently. In our opinion, the trial court, for the limited purpose of receiving what was represented as being sensitive information, had the inherent power to conduct that proceeding. We therefore reject PNI's contention that it is entitled to a transcript of the *in camera* proceeding based upon its argument that the proceeding was held without lawful authority.

Simply stating that the trial court had the power to conduct an *in camera* hearing under the circumstances presented does not end our inquiry, for PNI argues, rather persuasively, that once the trial judge ruled that the information she received did not justify closing the hearing on modification, the constitutional presumption of openness reattached and it is entitled to a transcript of that proceeding.

While both the state and the defendant urge against disclosure, they do so for different reasons. The defendant's argument is twofold: (1) that the nature of the information disclosed to the trial court could put him in danger of retaliation and (2) since the trial judge agreed to seal the transcript prior to disclosure, and disclosure occurred only upon that agreement, to now allow disclosure would breach the conditions under which disclosure was made.

Dealing with the first contention, although this court is not privy to what occurred in the *in camera* hearing, it is apparent that the trial court was not convinced that the nature of the information received would place the defendant in peril because she refused to close the hearing where this information would become public. In absence of a contention that the trial judge erred in this evidentiary determination we will assume that the trial judge correctly ruled on this issue.

■ The defendant's second contention causes us pause. The defendant's argument that to now allow disclosure after disclosure was made specifically upon the court's order that the transcripts would be

sealed is "basically unfair" has some appeal. However, upon reflection, we are not convinced that the right to "rely" upon the trial court's agreement was justified. Although there is a paucity of authority on the subject of "unsealing" *in camera* proceedings, what can be ascertained is that non-disclosure cannot last forever and that disclosure should occur "once the danger of prejudice has dissipated." *Gannett Company v. DePasquale*, 443 U.S. 368, 393, 99 S.Ct. 2898, 2912, 61 L.Ed.2d 608, 629 (1979). In our opinion, public policy demands this type of approach. See Rule 9.3(b). As we have indicated, non-disclosure should be the exception rather than the rule. The right to keep confidential that information received during *in camera* hearings must give way to the constitutional requirements of openness when "the danger of prejudice has dissipated." We therefore hold that the court cannot be bound by agreements of counsel to perpetually seal transcripts of court proceedings and counsel's reliance upon such an agreement is legally misplaced.

The state's argument against non-disclosure of what occurred in the *in camera* hearing is more limited. The state has no objection to releasing portions of the transcript which dealt with the financial affairs of National Bullion & Coin, Inc. or with the defendant Rogers' involvement in those affairs. However, the state strenuously objects to releasing portions of the transcript which relate to collateral criminal investigations and potential prosecutions unrelated to Rogers as a criminal defendant. In this regard, the state argues that such investigations and the resulting apprehensions and prosecutions would be severely hampered by disclosure. Moreover, the state has no objection to the disclosure of such information after the investigative procedures are completed and charges filed.

In assessing this contention, we do not find that the trial court's subsequent determination that the modification of probation sentence hearing would not be closed, disposes of the factual issue of whether disclosure of certain portions of the transcripts would be prejudicial to the state's interest in ongoing criminal investigations. During the course of the *in camera* hearing, both the prosecutor and defense counsel agreed that this type of information should not be disclosed and in any event would not be presented in the modification hearing. Therefore, it appears that the trial court was not called upon to make a factual finding concerning the state's allegation of prejudice.

In this regard, PNI argues that the state had merely suggested a possibility of danger which is speculative and therefore does not constitute "a clear, present threat to the due administration of justice...." *Phoenix Newspapers, Inc. v. Jennings*, 107 Ariz. 557, 561, 490 P.2d 563, 567 (1971), which would justify non-disclosure. The state responds by asserting that conduct which would warn another of impending discovery, apprehension, prosecution or conviction is criminally punishable (*See* A.R.S. §§ 13-2510–2512), and therefore the trial court is precluded from releasing this type of information. This argument, of course, presumes that the information given by Rogers falls within the prohibited classification, a ruling the trial court was not called upon to make and one which this court is unable to make.

However, the state does have a legitimate interest in protecting ongoing investigations from premature discovery. In our opinion, the resolution of this problem requires the trial court to balance the presumption that information received by it is to be open to the public against the need for the state to keep confidential that information which will jeopardize ongoing criminal investigations. *See, e.g., United States v. Bocra*, 623 F.2d 281 (3d Cir.), *cert. denied*, 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980); *United States v. Kampiles*, 609 F.2d 1233 (7th Cir.1979), *cert. denied*, 446 U.S. 954, 100 S.Ct. 2923, 64 L.Ed.2d 812 (1980); *United States v. Pelton*, 578 F.2d 701 (8th Cir.), *cert. denied*, 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978).

Therefore, this matter is remanded to the trial court for a determination of whether the information which it received *in camera,* if disclosed, would interfere with pending criminal investigations and if so, that information shall remain sealed until such time as prejudice which might flow from its release has passed.

We further hold that any other information received by the trial court in the *in camera* proceedings be released to the petitioner.

This matter is remanded for further proceedings not inconsistent with this opinion.

CONTRERAS, P.J., and GRANT, J., concur.