## In Re: Affidavit for Search Warrant for 4011 Wilson Avenue, Bethlehem, Pa

*Richard H. Pepper, assistant district attorney,* for the Commonwealth.

*Malcolm J. Gross,* for Call-Chronicle Newspaper.

FREEDBERG, *J.,* March 18, 1986 — This matter is before the court for disposition of a petition filed by the Call-Chronicle Newspapers Inc. requesting an order of this court directing District Justice John Gombosi to release to petitioner a search warrant, affidavit in support thereof, and any other documents filed in connection therewith. The request is opposed by the district attorney and by Stephen Miga, the owner of the premises subjected to the search.

The averments of the petition which have been admitted reveal that police filed an affidavit with District Justice John Gombosi to obtain a search warrant for Miga's premises, and that the search

warrant was issued and executed. The search occurred in September, 1985.[1] The district justice refused petitioner's request for the aforementioned documents upon instructions of the District Attorney of Northampton County. It is further admitted that the district justice has not filed the documents with the clerk of court.

On February 5, 1986, Assistant District Attorney Pepper stated that the Commonwealth opposed the prayer of the petition because publication of the content of the documents would jeopardize ongoing investigations and witness safety. The assistant district attorney then asked the court to conduct an in camera hearing to permit him to testify in support of this contention. Request for an in-camera hearing was opposed by the attorney for the Call-Chronicle Newspapers Inc.

### IN-CAMERA HEARING

On February 14, 1986, the assistant district attorney stated in open court that for him to testify publicly about the matter would jeopardize ongoing investigations including a state-wide investigative Grand Jury probe of conduct in Bethlehem Township, Northampton County, and a collateral investigation. Counsel for the Call-Chronicle Newspapers Inc. reiterated opposition to the request for an in-camera hearing.[2] This court then granted the district attorney's request for the in-camera proceeding subject to the condition that if the court found that the matters disclosed in the in-camera proceeding did not justify continued sealing of the transcript of

---

1. The petition incorrectly asserts that it occurred in September, 1984.

2. Miga, who appeared without counsel, stated his opposition to release of the documents and has not participated further.

that proceeding to protect ongoing criminal investigations, then the transcript would be unsealed. The court also allowed counsel for the Call-Chronicle Newspapers Inc. to participate in the in-camera hearing provided that counsel and his client would agree that counsel would not disclose to anyone, including his client, the content of the in-camera hearing. Call-Chronicle Newspapers Inc. and its counsel agreed to be so bound, and the in-camera hearing was then conducted with counsel for Call-Chronicle Newspapers Inc. fully participating.

While recognizing that a First Amendment right of access to court proceedings is involved in our decision to permit an in camera hearing, see Commonwealth v. Buehl, 316 Pa. Super. 215, 462 A.2d 1316 (1983) and Commonwealth v. Fenstermaker, 348 Pa. Super. 230, 502 A.2d 181 (1985), the existence of the right under the First Amendment is not per se dispositive. Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 65 L.Ed. 2d 973, 100 S.Ct. 2814 (1980) fn. 18. Courts have the inherent power to conduct an in-camera proceeding in unusual circumstances. See, Taglianetti v. United States, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed. 2d 302 (1969) approving in-camera inspection of electronic surveillance tapes as not violative of a defendant's Fourth Amendment right of confrontation; Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed. 2d 973 (1966), recognizing that a court may use an in-camera inspection to rule upon applications for protective orders and unusual situations such as those involving national security or dangers to individuals identified by testimony produced; and Commonwealth v. Bonasorte, 337 Pa. Super. 332, 486 A.2d 1361 (1984) specifically authorizing in-camera hearings to ensure continued confidentiality of an informant's identity.

The instant case presents the issue whether an in camera proceeding is appropriate when the Commonwealth asserts that disclosure of testimony which it intends to offer in opposition to a petition for release of a search warrant and related documents will have a detrimental impact on ongoing criminal investigations. We believe that "the state does have a legitimate interest in protecting ongoing investigations from premature discovery. In our opinion, the resolution of this problem requires the trial court to balance the presumption that information received by it is to be open to the public against the need for the state to keep confidential that information which would jeopardize ongoing criminal investigations." Phoenix Newspapers v. Maricopa County Superior Court, Arizona Court of Appeals — Division 1, 140 Ariz. 30, 680 P.2d 166, 171 (1983). As noted by Judge Pollack in Crawford v. Dominic, 469 F.Supp. 260, 264 (E.D., Pa. — 1979). ". . . [T]he public has the strongest interest in maintaining the confidentiality of [matters] . . . concern[ing] an ongoing criminal investigation." While courts should opt for in-camera hearings only for the most compelling reasons both because of constitutional requirements and to enhance public confidence in the judicial process, Buehl, supra, and Waller v. Georgia, 467 U.S. 39, 81 L.Ed. 2d 31, 104 S.Ct. ____ (1984), we are convinced that the need to protect ongoing criminal investigations is appropriate basis for an in-camera hearing.[3]

We are mindful that Buehl, supra, requires a court to state on the record and before ordering clo-

---

3. ". . . the right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." Waller v. Georgia, supra, at 38.

sure the reasons for closure and its consideration of alternatives. Press Enterprise Co. v. Superior Court, 464 U.S. 501 78 L.Ed. 2d 629, 104 S.Ct. 819 (1984). This is possible when the motion for closure occurs in the context of protecting a defendant's right to a fair trial by avoiding pretrial publicity. In a case where the motion for closure is advanced by the Commonwealth to ensure the confidentiality of ongoing investigations and is opposed by a party to the proceeding, the court has no basis on which to make findings on the appropriateness of closure until hearing the precise evidence which the Commonwealth seeks to keep secret. Further, we know of no devices other than closure to secure the confidentiality sought by the Commonwealth to protect ongoing investigations.

The question then becomes whether the evidence presented by the Commonwealth at the in-camera hearing posed a threat to ongoing criminal investigations. If so, the transcript of the in-camera hearing should remain sealed. If not, the transcript should be unsealed. Having heard the testimony offered by the Commonwealth in this matter, we find that the testimony, if offered in court, would have threatened ongoing investigations by revealing the subject matter of the collateral investigation thereby tipping off potential targets of that investigation enabling destruction of evidence. Further disclosure would have hampered the grand jury investigation by making public information pertaining to the progress of that investigation. Thus, closure was appropriate.

## SEARCH WARRANT AND RELATED DOCUMENTS

In Commonwealth v. Fenstermaker, supra, the Superior Court panel held that there is a First Amendment right of access to probable cause affi-

davits in support of arrest warrants. In Fenstermaker, the court cited with approval Associated Press v. United States District Court for the Central District of California, 705 F.2d 1143 (9th Cir. — 1983), wherein it was said, "There is no reason to distinguish between pretrial proceedings and the documents filed in respect to them. . . . Pretrial documents . . . are often important to a full understanding of the way in which 'the judicial process and the government as a whole' are functioning." Pa.R.C.P. 2010 requires the issuing authority to file the warrant, all supporting affidavits, and the inventory with the clerk of court of common pleas. Thus, we conclude that the documents in question are judicial records to which a First Amendment right of access applies. See, Commonwealth v. Ortiz, No. 1344 of 1985 (C.P. Lehigh Co., July 12, 1985) (Backenstoe, P.J.).

While a First Amendment right of access exists, it is a qualified right involving a balancing process. In this regard, Fenstermaker is instructive. In Fenstermaker, the newspaper sought permission to inspect and copy affidavits of probable cause supporting arrest warrants of defendants charged with homicide and rape. The application of the newspaper was opposed by both the Commonwealth and defendant. The court held that the newspaper's right under the First Amendment to inspect the affidavits was qualified by the defendant's right under the Sixth Amendment to a fair trial. In balancing the conflicting rights, the trial court should consider not only the threat to a fair trial engendered by pretrial publicity but means of dissipating the threat such as change of venue, voir dire, and jury instructions.

Unlike Fenstermaker, the instant case does not present a question of a defendant's right to a fair tri-

al. Miga, who appeared to object to the release of the information, has not been charged with a crime, nor has the Commonwealth indicated an intention to do so. Further, no evidence has been offered by Miga or the Commonwealth that the release of the information would prejudice Miga's right to a fair trial under the Sixth Amendment. Rather, the contention by the Commonwealth is that release of the documents would prejudice an ongoing Grand Jury investigation and a collateral investigation by the state police by revealing details of the investigations and the participation of individuals in those investigations. We hold that when release of such documents will jeopardize an ongoing investigation by the police, the court may seal such documents from public access pending completion of the investigations. See, Matter of Sealed Affidavits to Search Warrants, 600 F.2d 1256 (9th Cir. — 1979); United States v. Smith, 602 F.Supp. 388 (M.D., Pa. — 1985); Phoenix Newspapers v. Maricopa County Superior Court, supra.[4] Courts have an inherent power to control their records and proceedings, and may deny access when appropriate. See, Nixon v. Warner Communications Inc., 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed. 2d 570 (1978).

In evaluating the Commonwealth's contention herein, we note that in Fenstermaker, supra, the court quoted with approval United States v. Martin, 746 F.2d 964 (3rd Cir. — 1984) that speculative

---

[4] This holding is supported by the fact that both the Federal Freedom Of Information Act, 5 U.S.C. §552, et seq., and the Pennsylvania Right To Know Act, 65 P.S. §66.1, et seq., exempt from disclosure requirements information, the release of which would interfere with ongoing investigations. See, 5 U.S.C. 552(b) (7) (A), 65 P.S. §66.1(2), and Starobin v. Department of Revenue, 53 Pa. Commw. 543, 418 A.2d 800 (1980).

threats to the right of an accused to a fair trial have never been sufficient to overcome First Amendment rights. Clearly, the same applies to the evaluation which we conduct in the instant case. See Press-Enterprise v. Superior Court, supra. Mere assertions of prejudice to ongoing investigations are not sufficient. A clear and present threat to the due administration of justice is required. Denial of access cannot be justified "absent an overriding interest." Richmond Newspapers Inc. v. Virginia, 448 U.S. 555, 65 L.Ed. 2d 973, 100 S.Ct. 2814 (1980). Based upon our review of the evidence submitted at the in camera hearing and the actual documents in question, we conclude that the Commonwealth has met its burden of showing compelling reasons to preclude public and press access to the documents at this time. We find as facts the matters testified to by the assistant district attorney at the in camera hearing.[5] To permit disclosure of the contents of the documents as requested by Call-Chronicle Newspapers Inc. would prejudice both the grand jury investigation and a collateral investigation by revealing information possessed by the Commonwealth and the names of those assisting the Commonwealth in the investigations. Specifically, the information contained in the documents would reveal the existence of a police investigation in the collateral matter thereby tipping off targets of the investigation so that evidence could be destroyed and a coverup ensue. The safety of the informant[s] might be jeopardized. Those called before the grand jury in the future would gain vital information about the

---

[5] The assistant district attorney testified under oath. Counsel for Call-Chronicle Newspapers Inc. offered no contradictory evidence, nor did he cross-examine the assistant district attorney.

progress of that investigation. Unlike the situation in Commonwealth v. Ortiz, supra, the redaction of the name of an informant, as proposed by counsel for Call-Chronicle Newspapers Inc., would not meet all of these concerns. For these reasons, the balance tips in favor of denial of access to the documents at this time.

In so holding, we are not denying access permanently. Once the danger of prejudice to the Commonwealth has dissipated, the documents and a transcript of the in camera hearing may be made available upon application. See Gannett Company v. DePasquale, 443 U.S. 368, 61 L.Ed. 2d 608, 99 S.Ct. 2898 (1979). To accomplish this, we order the Commonwealth to advise petitioner upon completion of the investigations so that petitioner may reinstate its application for release of the documents.

Finally, we note that Pa.R.C.P. 2010 requires that the district justice file the papers with the clerk of courts. While no time period is specified, the filing must occur within a reasonable period of time. The appropriate procedure for the Commonwealth in cases where it wishes to prevent public access to documents is set forth in Commonwealth v. Fenstermaker, supra. Thus, when the Commonwealth seeks to deny access to such documents it should file an affidavit setting forth reasons why the documents should be sealed from public inspection. Upon receipt of such an affidavit, the district justice shall seal the affidavits with leave to any interested person to appeal to the court of common pleas.

Wherefore, we enter the following

## ORDER OF COURT

And now, this March 18, 1986, it is hereby ordered:

1. District Justice John Gombosi shall forthwith file the affidavit for search warrant, search warrant, and inventory with the clerk of courts, criminal division, who shall seal said documents and not permit access thereto to anyone except upon further order of court.

2. The petition of Call-Chronicle Newspapers Inc. for access to the aforementioned documents is denied pending completion of the ongoing investigations referred to in this opinion.

3. Upon completion of the aforementioned investigations, the District Attorney of Northampton County shall notify petitioner which may then present a petition for unsealing of the documents and the transcript of the in camera hearing.