797 P.2d 693

STATE of Arizona, Appellee,

v.

Carl Bennett COATS, Appellant.

No. 1 CA–CR 88–834.

Court of Appeals of Arizona,
Division 1, Department B.

Feb. 15, 1990.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div., Paul J. McMurdie, Asst. Atty. Gen., Phoenix, for appellee.

Bret H. Huggins, Show Low, for appellant.

KLEINSCHMIDT, Judge.

The defendant was charged with possession of marijuana for sale. Prior to trial, he moved to suppress evidence seized during a search of his home. After an evidentiary hearing, the motion to suppress was denied. The matter was submitted for trial without a jury on a stipulated record. The trial judge found the defendant guilty as charged with one prior felony conviction. He was sentenced to the presumptive term of seven and one-half years' imprisonment.

The only issues on appeal deal with the denial of the motion to suppress. The facts that bear on that question are as follows. On December 24, 1987, a woman by the name of Mary Ann Munzinger accompanied her husband to the defendant's trailer in or near Lakeside. Munzinger's husband purchased marijuana from the defendant for $30. Munzinger witnessed the transaction and a short time later told police officers about it. On January 2, 1988, based on what she had told him, Pinetop Police Officer Rick Garsha submitted an affidavit for a search warrant to a justice of the peace.

The part of that warrant relating to probable cause read as follows:

(X) the crime of poss of Marijuana (is being) committed by Benny Coates in the following manner:

That Benny Coates is in possession of marijuana and said marijuana is presently in the residence of Benny Coates behind the Lone Oaks Trailer Park off Rainbow Lake Drive, Westside Park Subdivision Lakeside, Arizona.

That the affiant has probable cause to believe and he does believe that there is now:

(X) in the possession of Benny Coates.

(X) in and on the premises and building(s) described as Benny Coates residence (trailer) behind Lone Oak Trailer Park West Lake Park Subdivision Navajo County. Approx. 8′ × 35′ trailer tan in color with brown trim white curtains wood stove, shiny steel stove pipe exiting the roof, all out buildings, lien to's and sheds and containers outside the residence, as well as vehicles described as follows: metallic green Chev. 4 × 4 pick up truck, no lic plates visible 1980 blue Chev Camaro, lic # WMJ606AZ and any other vehicle under Benny Coates control at the residence in the County of Navajo including all the curtilage of said premises. . . .

\* \* \* \* \* \*

(X) were used as a means of committing; 13–3405A1 possession of marijuana and 13–3405A2 poss for sale.

(X) is being possessed with the intent to use as a means of committing 13–3405A2 poss of marij for sale and possession of marijuana 13–3405A1.

(X) are in the possession of Benny Coates to whom it was delivered for the purpose of concealing it or preventing it from being discovered.

(X) consists of any item or constitutes any evidence which tends to show that poss of marij for sale and poss of marijuana has been committed, or tends to show that Benny Coates has committed possession for sale and poss of marijuana.

That said person, property or things are described particularly as follows: Marijuana genus cannabis and paraphernalia including, but not limited to pipes for smoking, weighing devices, green and tan flakes, containers of various types commonly used for storage of said marijuana, any articles of personal identification tended to establish residency and control.

That the following facts establish probable cause for believing that grounds for the issuance of a search warrant for the aforementioned items exist: That within the past seventy-two (72) hours, a confidential and reliable informant advised your Affiant that Benny Coates was in possession on the above dates of Marijuana known to your Affiant as Marijuana. That confidential and reliable informant observed these items of contraband with her own eyes, and personal experience. These items of contraband are known to be a useable quantity, for sale of quarter baggies at a time. These items were seen in the residence of Benny Coates known as Benny Coates Res., Lone Oak Trailer Pk Navajo County. Affiant believes the informant to be reliable because, of her personal experience married to a drug user and concern for her husbands well being. That informant knows what Marijuana is as well as other drugs and Narcotics through her husbands abuse and experience. Your affiant believes the information to be reliable because Benny Coates is beleaved by fellow officers to be a drug pusher and from information Affiants confidential and reliable informant has given and her personal knowledge of the defendant. That officers have received information on defendant on prior occasions tended to show that Benny Coates does Possess and Poss for sale Marijuana. Informant was present when her husband perchased marijuana from Benny Coates on Dec. 24, 1987 at approx 4:30 p.m. for $30.00 in exchange for a quarter Baggie of Marijuana.

Upon reading the affidavit, the justice of the peace recognized the unnamed informant as Mary Ann Munzinger, with whom, not long prior, he had a long conversation about charges filed against her husband. These charges had grown out of a domestic dispute which in turn apparently stemmed from Mrs. Munzinger having told the police about the defendant's sales of drugs.

The justice of the peace, relying on the affidavit and what he had learned from talking to Mrs. Munzinger, signed the search warrant. Later that day, police officers entered the defendant's trailer pursuant to the search warrant and seized over four pounds of marijuana, numerous firearms, and other items.

Defense counsel, in his motion to suppress, pointed to three specific problems: (1) the warrant incorrectly identified the defendant's address, (2) the warrant contained insufficient indicia of the informant's reliability, and (3) the warrant was based upon stale information. After an evidentiary hearing, the trial judge found that the affidavit in support of the warrant was not fatally defective because of the mistaken address. He also found that it contained sufficient information to justify issuance of the warrant save for the fact that the information was stale. He went on to rule, however, that the good-faith exception to the exclusionary rule, which is derived from A.R.S. section 13–3925 and *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), applied. He therefore denied the motion to suppress.

We should say at the outset what we are not called upon to decide. We do not consider whether the affidavit in support of the search warrant was in fact sufficient. The state apparently acquiesces in the trial judge's finding that the information contained in the warrant was stale. Nor do we need to decide the effect of the justice of the peace's consideration of unsworn information. *See State v. Smith,* 112 Ariz. 531, 544 P.2d 213 (1975) (all information imparted to a magistrate in support of a search warrant must be under oath). We *assume* that the affidavit was insufficient and that the warrant was therefore invalid. The issues devolve into whether the Arizona law which recognizes a good-faith ex-

ception to the exclusionary rule is valid; if so, whether that exception can apply in this case; and whether the mistake in the address of the place to be searched is fatal to the validity of the search.

## VALID ARIZONA LAW RECOGNIZES A GOOD–FAITH EXCEPTION TO THE EXCLUSIONARY RULE

The statute the court relied on reads, in pertinent part, as follows:

A. If a party in a criminal proceeding seeks to exclude evidence from the trier of fact because of the conduct of a peace officer in obtaining the evidence, the proponent of the evidence may urge that the peace officer's conduct was taken in a reasonable, good-faith belief that the conduct was proper and that the evidence discovered should not be kept from the trier of fact if otherwise admissible.

B. The trial court shall not suppress evidence which is otherwise admissible in a criminal proceeding if the court determines that the evidence was seized by a peace officer as a result of a good-faith mistake or technical violation.

C. In this section:

1. 'Good-faith mistake' means a reasonable judgmental error concerning the existence of facts which if true would be sufficient to constitute probable cause.

2. 'Technical violation' means a reasonable good-faith reliance upon:

(a) A statute which is subsequently ruled unconstitutional.

(b) A warrant which is later invalidated due to a good-faith mistake.

(c) A controlling court precedent which is later overruled, unless the court overruling the precedent orders the new precedent to be applied retroactively.

A.R.S. § 13–3925.

The defendant claims the statute is invalid because it impinges on the rule-making authority of the Arizona Supreme Court and violates the principles of separation of powers embodied in the Arizona Constitution.

■ The legislature has plenary power to deal with any subject within the scope of government unless it is restrained by the provisions of the constitution. *Giss v. Jordan,* 82 Ariz. 152, 309 P.2d 779 (1957). The legislature has all power not expressly prohibited, or granted to another branch of government. *Adams v. Bolin,* 74 Ariz. 269, 247 P.2d 617 (1952). It may not, however, enact a law that contravenes the express or inferred provisions of the Arizona Constitution. *Harris v. Maehling,* 112 Ariz. 590, 545 P.2d 47 (1976).

■ The Arizona Constitution exclusively vests the power to make procedural rules in the Arizona Supreme Court.

The Supreme Court shall have:

 * * * * * * *

5. Power to make rules relative to all procedural matters in any court.

Ariz.Const. art. 6, § 5. The power of the supreme court to make these rules, which includes the rules of evidence, may not be reduced or repealed by the state legislature. *State v. Robinson,* 153 Ariz. 191, 735 P.2d 801 (1987); *Arizona Podiatry Ass'n v. Director of Ins.,* 101 Ariz. 544, 422 P.2d 108 (1966).

We do not find the usual definitions of what is procedural and what is substantive particularly helpful to this inquiry, perhaps because as noted in the concurring opinion in *State v. Fowler,* 156 Ariz. 408, 414, 752 P.2d 497, 603 (1987), a rule may be procedural in one context and substantive in another, depending on the policy that the rule is intended to serve.

The exclusionary rule is, in essence, judge-made law designed to vindicate the constitutional right to privacy as embodied in the Fourth and Fifth amendments to the Constitution of the United States and in article 2 sections 8 and 10 of the Arizona Constitution. It gives substance to those rights so that they do not merely become a "form of words." *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319, 321 (1920). It also serves "the imperative of judicial integrity"—that is—it is a recognition that the judiciary ought not be involved in ex-

ploiting violations of the basic law. *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669, 1680 (1960). Although it has been referred to as a rule of evidence, *Smith Steel Casting Co. v. Donovan*, 725 F.2d 1032 (5th Cir. 1984), it is not. *Mapp v. Ohio*, 367 U.S. 643, 649, 81 S.Ct. 1684, 1688, 6 L.Ed.2d 1081, 1086 (1961).

■ The fact is that the exclusionary rule, as a pronouncement of what the federal and state constitutions require, seems to be in a category by itself. We need not decide to just what species it belongs because the Supreme Court of Arizona has repeatedly said that it will recognize a statutory rule which invades the court's prerogative if the statute is "reasonable and workable" in relation to court promulgated rules. *State ex rel. Collins v. Seidel*, 142 Ariz. 587, 591, 691 P.2d 678, 682 (1984). *See also State v. Superior Court*, 154 Ariz. 574, 744 P.2d 675 (1987). The focus then, is on whether A.R.S. section 13–3925 is a reasonable and workable amendment to the exclusionary rule. We believe that our supreme court, in addressing a related question in *State v. Bolt*, 142 Ariz. 260, 689 P.2d 519 (1984), gave a clear indication that it would tolerate the incursion of the statute we now consider.

In *Bolt*, the court held that the police practice of entering a residence and securing it by searching out occupants to prevent them from destroying evidence was, in the absence of exigent circumstances, a violation of article 2, section 8 of the Arizona Constitution, even if such conduct might not violate the United States Constitution. The significance of *Bolt* for the case before us is that in *Bolt* our supreme court expressly held that "the exclusionary rule to be applied as a matter of state law is no broader than the federal rule." *Id.* at 269, 689 P.2d at 528. Logically, that would mean that if there is a good-faith exception to the exclusionary rule under federal law, such an exception exists under state law as well. There is, of course, a good-faith exception to the exclusionary rule under federal law. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

The supreme court did go on to say in *Bolt* that it was leaving open the question of whether it would retain an exclusionary rule for violations of the Arizona Constitution if the Supreme Court of the United States abandoned the exclusionary rule for violations of the federal constitution. Although *Bolt* mentions *Leon* in the footnotes, it does not discuss that decision in detail. Obviously, however, our supreme court was aware that the good-faith exception to the exclusionary rule, as applied to the Constitution of the United States, was in force when it decided that the state exclusionary rule was no broader than the federal rule. Thus, we conclude that A.R.S. section 13–3925 was both within the power of the legislature to enact and offends neither the state nor federal constitutions.

## THE TRIAL COURT DID NOT ERR IN FINDING THAT THE OFFICERS RELIED ON THE WARRANT IN GOOD FAITH

■ While we recognize the good-faith exception to the exclusionary rule, there are limits to its application. Subjective good faith on the part of the officers is insufficient. Their conduct in reliance on the warrant must be objectively reasonable. *Leon*, 468 U.S. 897, 104 S.Ct. 3405. This depends upon

> whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances—including whether the warrant application had previously been rejected by a different magistrate— may be considered.

*Id.*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23.

Our own statute defines good faith as follows:

> 'Good-faith mistake' means a reasonable judgmental error concerning the existence of facts which if true would be sufficient to constitute probable cause.

A.R.S. § 13–3925(C)(1).

■ A trial court's ruling on a motion to suppress will not be reversed absent an

abuse of discretion. *State v. Prince*, 160 Ariz. 268, 772 P.2d 1121 (1989).

The defendant says that reasonably trained police officers should have known that the affidavit was defective under the test set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). That case abandoned the "two-pronged test" derived from *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), which required that the affidavit had to reveal the basis of the informant's knowledge *and* provide additional facts tending to establish the veracity of the informant or the reliability of his report. *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. *Gates* substituted a "totality of the circumstances test" by which courts called upon to issue search warrants are to assess the probability that criminal conduct is taking place. *Id.*

 It is true that there were statements in the affidavit that were merely conclusory and added little to its strength, but the defendant is rather unspecific about just why, under the totality of the circumstances, the affidavit was insufficient. His argument ignores the factors the trial judge considered in this case, i.e., that the affidavit related that the informant had personally seen the marijuana, was familiar with marijuana because her husband used it, and had contacted the police because she wanted to stop her husband's drug use. As the trial judge observed, citizen informants are presumed to be reliable, *State v. deBoucher*, 135 Ariz. 220, 660 P.2d 471 (App.1983), particularly when they have personally observed the criminal conduct they describe. *State v. Rodgers*, 134 Ariz. 296, 655 P.2d 1348 (App. 1982).

 The trial judge was of the opinion that under the totality of the circumstances test the affidavit was sufficient except that the information it contained was stale. Strictly speaking, this is not the kind of error "concerning the existence of facts" to which A.R.S. section 13–3925(C) refers. Rather, it is error concerning a mixed question of fact and law. Nonetheless, the officers here, like the officers in *Leon*, were relying on a facially valid warrant. We do not believe it was unreasonable to do so because, assuming the information was stale, it was only marginally so. In the face of the information the affidavit did contain we cannot say that the trial judge abused his discretion in finding that reasonably well trained officers might have relied on the warrant in good faith.

## DESCRIPTION OF THE PLACE TO BE SEARCHED

 In the affidavit attached to the search warrant, the place to be searched was described as the "Benny Coates residence (trailer) behind Lone Oak Trailer Park West Lake Park Subdivision Navajo County. Approx. 8′ × 35′ trailer tan in color with brown trim white curtains wood stove, shiny steel stove pipe exiting the roof...." The warrant also mentioned that Coats' residence was behind the Lone Oaks Trailer Park off Rainbow Lake Drive, West Lake Park Subdivision in Lakeside, Arizona. At the evidentiary hearing, appellant's counsel noted that appellant's residence is near the Lonesome Pine Trailer Park and that there is a Lone Oak Trailer Park about 15 miles away from appellant's residence. The trial judge found that, although the trailer park that defendant lived next to was mistakenly named, other information contained in the affidavit sufficiently described the location and physical characteristics of the trailer. The trial judge also noted that the officer was mistaken only as to the name of the trailer park and not the true location of the trailer. Appellant claims that the trial judge erred by finding the warrant sufficiently described the place to be searched.

A search warrant must particularly describe the place to be searched. *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). The test for determining the sufficiency of the description is whether the place to be searched is described with enough particularity to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly

**160**

searched. *United States v. Turner*, 770 F.2d 1508 (9th Cir.1985), *cert. denied*, 475 U.S. 1026, 106 S.Ct. 1224, 89 L.Ed.2d 334 (1986). The appellant lived in neither the Lone Oak nor Lonesome Pine Trailer Park, merely near the Lonesome Pine Trailer Park. While the name of the trailer park may have been erroneous, the other information sufficiently identified the place to be searched. Appellant has failed to show an abuse of discretion.

The conviction and sentence are affirmed.

VOSS, P.J., and JACOBSON, J., concur.