882 P.2d 1285

**PHOENIX NEWSPAPERS, INC., Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Ronald S. Reinstein, a judge thereof, Respondent Judge,**

STATE of Arizona, Real Party in Interest.

No. 1 CA–SA 93–0234.

Court of Appeals of Arizona, Division 1, Department D.

Dec. 30, 1993.

Review Denied Nov. 1, 1994.*

---

* Corcoran and Martone, JJ., of the Supreme Court, voted to grant the Petition for Review.

Scult, Lazarus, French, Zwillinger & Smock, P.A. by James F. Henderson and Patricia A. Sallen, Phoenix, for petitioner.

Richard M. Romley, Maricopa County Atty. by Arthur Hazelton and John R. Ditsworth, Phoenix, for real party in interest.

## OPINION

GRANT, Judge.

The petitioner, Phoenix Newspapers, Inc. ("PNI"), filed this special action requesting this court to determine whether Ariz.Rev.

Stat.Ann. ("A.R.S.") section 13–3918(A) (1989) requires the real party in interest, the State of Arizona ("the state"), to disclose all search warrants and affidavits after they have been served even before a criminal case is filed. This issue is one of first impression in Arizona. We accept jurisdiction because there is no equally plain, speedy, and adequate remedy by appeal. Rule 1, Ariz. R.P.S.A. By order dated October 12, 1993, we accepted jurisdiction and denied relief with this opinion to follow.

## FACTS

The Glendale Police and the Maricopa County Attorney obtained and executed search warrants in the investigation into the murder of a young woman reputed to be a former girlfriend of Phoenix Suns player Jerrod Mustaf. For that reason, the investigation achieved a high public profile. The respondent, Judge Ronald S. Reinstein, in his capacity as presiding criminal judge, sealed the search warrants and the search warrant affidavits after they were served and returned. PNI and other media requested that the documents be unsealed. Judge Reinstein denied this request. Subsequent to this denial, redacted copies of the supporting affidavits, a narrative of facts and three property slips detailing items found during the execution of the warrants were released to the media.

## DISCUSSION

### I. THE STATUTE

■ PNI claims the trial court was without jurisdiction to redact the search warrant documents and did so in violation of the clear language of A.R.S. section 13–3918(A), which reads as follows:

A search warrant shall be executed and returned to the issuing magistrate within five days after its date. Upon expiration of that time, the warrant, unless executed, is void. The documents and records of the court relating to the search warrant need not be open to the public until the execution and return of the warrant or the expiration of the five day period after issuance. Thereafter, if the warrant has been served, such documents and records shall be open to the public as a judicial record.

Prior to the 1970 amendment, this statute read:

A search warrant shall be executed and returned to the magistrate who issued it within ten days after its date. After the expiration of that time, the warrant shall, unless executed, be void.

■ PNI states that the cardinal rule of statutory interpretation is to determine and give effect to the legislative intent behind the statute. *Calvert v. Farmers Ins. Co.*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985). In construing a statute, we look at the language as the most reliable evidence of the legislature's intent. *State ex rel. Corbin v. Pickrell*, 136 Ariz. 589, 594, 667 P.2d 1304, 1309 (1983). PNI takes the position that the legislative intent is clear on the face of this statute, and that the intent is to make search warrants and affidavits open to the public after the warrants are executed and returned. The word "shall" usually indicates a mandatory provision. *Matter of Guardianship of Cruz*, 154 Ariz. 184, 185, 741 P.2d 317, 318 (App. 1987). Furthermore, PNI argues, the legislature, by amending the statute, intended to change existing law rather than perform a futile act. *Lake Havasu City v. Mohave County*, 138 Ariz. 552, 558, 675 P.2d 1371, 1377 (App.1983). If there were any question about the status of these types of documents as public records, the legislature intended to dispel it by explicitly amending the statute in 1970. PNI states that had the legislature intended that judges have the power to withhold or redact these documents, it would not have enacted such an explicit amendment.

At first blush, PNI's analysis is inviting. This case hinges on the interpretation of the final clause of A.R.S. section 13–3918(A): "such documents and records shall be open to the public *as a judicial record*." (emphasis added). Does this clause mandate the public release of search warrant documentation or should it be interpreted as permissive? The word "shall" certainly implies a mandatory provision. But what is mandated? In this context, what is mandated is that the documents and records be open to the public "as a judicial record."

■ This is where we disagree with PNI's argument. The phrase "open to the public" is self explanatory, but the meaning of the phrase "as a judicial record" is not so apparent. If possible, courts should give meaning to all the language used in a statute and avoid an interpretation that renders a term either duplicative or meaningless. *Wiseman v. Arizona Highway Dep't ex rel. Campbell,* 11 Ariz.App. 301, 303, 464 P.2d 372, 374 (1970). Therefore, "as a judicial record" must mean something different than simply "open to the public."

■ PNI's argument would require that this court ignore the existence of the phrase "as a judicial record." The words of a statute should be given their ordinary meaning unless it appears from the context that a special meaning was intended. *Mid Kansas Fed. Sav. & Loan Ass'n v. Dynamic Dev. Corp.,* 167 Ariz. 122, 128, 804 P.2d 1310, 1316 (1991). The phrase "as a judicial record" interpreted as simply labeling a search warrant to be a court record would duplicate A.R.S. section 13–3911 which defines a search warrant as "an order . . . signed by a magistrate. . . ." This interpretation would also ignore the ordinary meaning of the word "as." In this context, the ordinary meaning of "as" is "in or to the same degree in which" or "in the way or manner that." *Webster's Ninth New Collegiate Dictionary* 106 (1984). Applying this definition to the last clause of section 13–3918(A) reveals the following interpretation: search warrants shall be open to the public to the same degree and in the way or manner that other judicial records are open to the public.

## II. THE DEGREE, WAY, AND MANNER JUDICIAL RECORDS ARE OPEN TO THE PUBLIC.

To apply this interpretation of the statute, one must determine to what degree and in what way or manner judicial records are open to the public. The parties cite only one Arizona case addressing public release of judicial records, *Phoenix Newspapers, Inc. v. Superior Ct.,* 140 Ariz. 30, 680 P.2d 166 (App. 1983). This case is controlling on this point. In *Phoenix Newspapers,* newspaper publishers challenged a trial court's refusal to release transcripts of an *in camera* hearing. This court recognized that a presumption exists requiring that information received by the court be open to the public. *Id.* at 35, 680 P.2d at 171. The state also has a legitimate interest in protecting ongoing investigations. *Id.* Therefore, *Phoenix Newspapers* held that the trial court must balance this presumption of openness against the need of the state to keep confidential that information which might jeopardize ongoing criminal investigations.[1] *Id.*

The 1970 amendment to section 13–3918(A) codified these same public policy concerns. First, courts may refrain from publicly disclosing search warrant documentation until the warrant is executed and returned. Second, after execution and return of the warrant, a presumption of openness exists which prevails unless other countervailing interests outweigh the presumption.

■ PNI argues that allowing the trial court, in the exercise of its discretion, to withhold the records from public disclosure would render the 1970 amendment futile. We can presume from the legislature's

---

1. The holding in *Phoenix Newspapers* relies in part on Article II, Section 11 of the Arizona Constitution: "Justice in all cases shall be administered openly, and without unnecessary delay." *Phoenix Newspapers* involved a proceeding in a criminal case *after* charges had been filed. It is possible that the presumption of openness discussed in *Phoenix Newspapers* does not apply prior to the filing of criminal charges or that it applies but with less strength, based only on sound public policy and without constitutional underpinnings. In *Seattle Times Co. v. Eberharter,* 105 Wash.2d 144, 713 P.2d 710, 716 (1986), the Supreme Court of Washington held that an identically worded provision in the Washington Constitution does not apply in a criminal matter that is still in the investigatory stages and in which no charges have yet been filed.

We need not discuss whether the presumption of openness applies prior to the filing of criminal charges, or if it does, what weight it carries in the balancing process. These issues are unnecessary to resolve today because PNI has not argued that the trial court improperly balanced the presumption of openness against the state's interest in preserving confidentiality. Rather, PNI's only argument, which we reject, is that under the statute, the trial court did not have the discretion to balance these countervailing interests.

amendment of the statute that the legislature intended to change the existing law rather than perform a futile act. *Lake Havasu City*, 138 Ariz. at 558, 675 P.2d at 1377.

Inherent in PNI'S argument is the proposition that if the statute were permissive as opposed to mandatory it would be a futile statute. We disagree. The permissive nature of a statute, with nothing more, does not render a statute futile.

## III. SEPARATION OF POWERS

 Further support for this permissive interpretation of A.R.S. section 13–3918(A) can be found in the doctrine of separation of powers embodied in the Arizona Constitution. "[I]f the statute is susceptible to two interpretations, one of which renders it unconstitutional, we must adopt the interpretation favoring its validity." *Lake Havasu City*, 138 Ariz. at 558, 675 P.2d at 1377. If we adopt the mandatory interpretation argued by PNI, we would have to conclude that the statute violates the separation of powers provisions of the Arizona Constitution. Accordingly, we reject the mandatory interpretation in favor of a permissive and therefore constitutional interpretation.

Article III of the Arizona Constitution states:

> The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others.

This sharp separation of powers must be carefully preserved by the courts so that one branch of government is not permitted to encroach upon functions properly belonging to another branch. *State v. Jones*, 142 Ariz. 302, 304, 689 P.2d 561, 563 (App.1984). The determination of whether a statute contravenes the constitutional mandate of separation of powers requires us to consider the following factors: the essential nature of the power being exercised, the degree of legislative control in the exercise of the power, the legislature's objectives in enacting the statute, and the practical result over a period of time of the blending of powers of two governmental branches as shown by actual experience when such evidence is available. *J.W. Hancock Enter. v. Arizona State Registrar of Contractors*, 142 Ariz. 400, 405, 690 P.2d 119, 124 (App.1984).

The first factor, the essential nature of the power being exercised, asks the question: Does the power belong exclusively to one branch of government or is it blended between two? *Id.* The Arizona Constitution vests the power to make procedural rules in the Arizona Supreme Court exclusively. *State v. Blazak*, 105 Ariz. 216, 217, 462 P.2d 84, 85 (1969). "The Supreme Court shall have ... [p]ower to make rules relative to all procedural matters in any court." Ariz. Const. art. 6, § 5. The Arizona Constitution further gives the supreme court administrative supervision over all the courts of the state. Ariz. Const. art. 6, § 3. This court has held that the manner by which the supreme court exercises its constitutional powers to establish rules of procedure for all courts of the state is exclusive to the judicial branch of government. *Jones v. Lopez Plascencia*, 10 Ariz.App. 253, 257, 458 P.2d 120, 124 (1969). The supreme court has not promulgated rules on public access to search warrants or other judicial records.[2] This absence of action by the supreme court does not authorize the legislature to act in the supreme court's place. The power of the supreme court to make these rules may not be reduced or repealed by the legislature. *Arizona Podiatry Ass'n v. Director of Ins.*, 101 Ariz. 544, 422 P.2d 108 (1966); *State v. Coats*, 165 Ariz. 154, 157, 797 P.2d 693, 696 (App.1990) (citing *State v. Robinson*, 153 Ariz. 191, 735 P.2d 801 (1987)).

Other branches of government have a legitimate interest in search warrants. A search warrant authorizes a peace officer, a

---

**2.** Pursuant to its rule making authority, the supreme court has promulgated the Rules of the Supreme Court, 17A, A.R.S. Within those rules is Rule 29, dealing with the maintenance and destruction of court records. Although not directly on point, this rule does govern the ultimate disposition of court records via their destruction.

member of the executive branch, to search for certain items. A.R.S. § 13–3911. Certainly the executive branch has a legitimate interest in the procedures for obtaining and executing a warrant and for the duration of the warrant's validity. Likewise, the legislature, as the public's representative, has a legitimate interest in seeing that the state discloses information concerning search warrants after the warrant has been served and the need for confidentiality has passed. But the legitimacy of these interests does not transform the supreme court's exclusive rule-making authority into a power shared by the other two branches of government.

The second factor, the degree of control by the legislative branch in the exercise of the power, poses the question: Is the statute a coercive influence or rather a mere cooperative venture between two branches of government? *J.W. Hancock Enter.*, 142 Ariz. at 405, 690 P.2d at 124. If the statute were to be interpreted as mandatory, the legislature would have specified, to the very day, when the judiciary must open its records to the public. Such an interpretation would *mandate* judicial action with no room for balancing the countervailing factors. If so interpreted, such a legislative action would be coercive and by no means a cooperative venture. On the other hand, interpreting the statute as permissive evidences the legislature's recognition of the supreme court's *constitutionally exclusive rule-making power.* The statute sets forth a framework governing public release of search warrants, but leaves the judiciary free to decide whether a document should be withheld from public disclosure prior to the filing of a criminal case.

The third factor, the nature of legislative objectives, relates to whether the legislature is offering its special expertise to the judiciary or whether the legislature is attempting to establish authority over the judiciary in an area which is inherently judicial. *Id.* In mandating the date required for public release of judicial records, the legislature has no unique or special expertise. To the contrary, the legislature is in no position to balance, on a case by case basis, the impact of public disclosure on the state's interest in maintaining confidentiality of an ongoing criminal investigation.

The fourth factor involves a determination of the practical result of the blending of legislative and judicial powers over a period of time when such evidence is available. *Id.* PNI submits an affidavit from an experienced reporter attesting that courts commonly withhold the release of warrants in high profile cases. This court is not a fact finder. This assertion standing alone, that courts are currently operating under a permissive interpretation of the statute, does not provide us with any meaningful evidence of the practical result over time of allowing the legislature to share the court's rule-making power in this area. Additionally, there is an absence of Arizona case law on the issue of releasing search warrant information to the public. Therefore we do not have a historical record supporting or detracting from either a permissive or a mandatory interpretation of the statute.

## CONCLUSION

We conclude that a statute which absolutely mandates when a court must release judicial records to the public would be a legislative exercise of the supreme court's rule-making power in violation of Article III, and Article VI, Sections 3 and 5, of the Arizona Constitution. Therefore, we reject the mandatory interpretation proposed by PNI and we adopt the permissive and constitutional interpretation of A.R.S. section 13–3918(A).

Consistent with A.R.S. section 13–3918(A), the issuing court may, in the exercise of its discretion, balance the presumption of openness against the state's need to keep confidential information which might jeopardize ongoing criminal investigations. The requested relief is denied.

GERBER, P.J., and FOREMAN, J., concur.

NOTE: The Honorable JOHN FOREMAN, Maricopa County Superior Court Judge, was authorized to participate in the disposition of this matter by the Chief Justice of the Ari-

zona Supreme Court pursuant to Article VI, Section 3 of the Arizona Constitution.